IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

PERMOBIL, INC.,                          )
                                         )
          Plaintiff,                     )
                                         )          Case No. 3:23-cv-586
     v.                                  )
                                         )          Judge Campbell
MARK WESTPHAL,                           )          Magistrate Judge Holmes
                                         )
          Defendant.                     )

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
OR IN THE ALTERNATIVE TO TRANSFER, AND MOTION FOR FEES AND
STATUTORY PENALTIES**

The alleged contract upon which Plaintiff sues is facially illegal, and Plaintiff's attempt to enforce that agreement is a *per se* violation of the laws of the state in which Defendant Mark Westphal ("Westphal") resides.

For the entirety of his employment with Permobil, Inc., ("Permobil"), Westphal was a resident of the State of Washington. On October 4, 2021, Permobil offered him a promotion. Its offer letter said nothing about the promotion being contingent upon a restrictive covenant. He accepted that job offer on October 5, 2021. On October 14, 2021, Permobil for the first time requested that he sign a noncompete agreement. This document included an out-of-state forum selection clause. Westphal responded by asking Permobil whether Tennessee or Washington law would apply to the contract. Permobil represented that Washington law would apply. Relying upon that representation, he signed the covenant (Permobil, however, did not). By the plain terms of the document that Permobil drafted, there was no independent consideration provided for this covenant. Instead, continued employment was the supposed consideration.

Permobil's restrictive covenant and attempted enforcement of the same violates the Washington Non-Compete Act ("WNA") – a statute that went into effect on January 1, 2020. *See*

1

RCW § 49.62.05, et al.  First, that statute prohibits an employer from subjecting a Washington-based employee to an out-of-state forum selection clause, subjecting the violator to penalties and fees. *See* RCW § 49.62.050.  Second, the Act holds that a noncompete is "void and unenforceable" where, as here, an employee was not apprised of the need to sign such a document prior to the acceptance of a job offer.  RCW § 49.62.020(1)(a)(i).  Third, a restrictive covenant is further "void and unenforceable" where, as here, it is not supported by "independent consideration." *Id.* § (1)(a)(ii).  Fourth, it is separate violation of the Act to try to enforce a noncompete with an out-of-state forum selection clause.  RCW § 49.62.080(iii).  Underscoring Washington's strong public policy against out-of-state forum selection clauses in restrictive covenants, its Attorney General is charged under the state's police powers to investigate and remedy violations of the Act. *Id.* § 49.62.080(iii).

The forum selection clause upon which Permobil pins venue is void and unenforceable, and this matter should be dismissed under Rule 12(b)(3).  Under the doctrine of *forum non conveniens*, courts will dismiss actions when interests of justice, fairness and oppressiveness so demand.  Those interests all cry for dismissal here.  Attempting to haul an individual defendant across the country to defend a noncompete that is plainly illegal could not be more unjust, unfair, and oppressive. Washington is a perfectly adequate (indeed preferable) venue for Permobil to refile its suit.  That is where Westphal lives and works, where Permobil maintains a significant presence, and where causes of action in Westphal's favor have now accrued.  Alternatively, this matter should be transferred under 28 U.S.C. § 1404(a).

Even if venue were somehow appropriate, this matter would still be subject to dismissal under Rule 12(b)(6).  Restrictive covenants that violate the WNA fail to state a claim. *See Sowa v. Ring & Pinion Serv.*, 2021 U.S. Dist. LEXIS 249678, *11 (W.D. Was. Sept. 9, 2021).  The Complaint pleads no plausible allegations on how the noncompete somehow complies with the WNA.  With respect to the Complaint's counts based upon a Non-Disclosure Agreement, those

2

counts fail to state a plausible claim. There are no allegations at all on what exactly Westphal allegedly disclosed. Those counts are based upon labels and conclusions, and nothing more.

## I. FACTUAL BACKGROUND

### A. Westphal Is a Washington-Based Employee.

Westphal is a resident of the State of Washington and has lived there for 29 years. (Compl. ¶ 2; Westphal Dec. ¶ 1).[1] Permobil is a Tennessee corporation that develops, manufactures and markets wheelchairs, seating and position devices, and other wheelchair accessories for people with disabilities. (Compl. ¶ 1). Permobil has a facility in Washington State with roughly 200 employees. (Westphal Dec. ¶ 4). Prior to March 2020, Westphal worked at that facility. After that time, he has worked from his home. (*Id.*).

### B. Westphal's Employment with Permobil.

Westphal became employed by Permobil in 2014, when Permobil acquired the company where he had been working at the time, TiLite. (Compl. ¶ 14). On October 4, 2021, Permobil offered Westphal a position as "Greenfield Services Workstream Lead" on a project called "Project Greenfield." (Westphal Dec. ¶ 10; Oct. 4, 2021 Offer Ltr.). His offer letter provided that he would be paid a base salary of $124,271. (*See* Oct. 4, Offer Ltr., at 1). The offer letter said nothing about this new position being contingent upon the execution of a restrictive covenant. (*See* Oct. 4, 2021 Offer Ltr.). In fact, prior to accepting the offer for this new position, no one at Permobil informed him that if he accepted this new position, he would be required to execute a non-compete agreement. (Westphal Dec. ¶ 14). Westphal signed this offer letter on October 5, 2021, and returned it to Permobil Human Resources Manager Heidi Wilkerson. (*See id.*; Westphal Dec. ¶ 15). The offer

---

[1] Westphal offers his Declaration (filed contemporaneously herewith) and its exhibits in support of his motion to dismiss for improper venue under Rule 12(b)(3), and his motion for fees and penalties under the WNA. His Declaration is not offered in support of his motion under Rule 12(b)(6), with one exception. His offer letter from Permobil is offered in support of his Rule 12(b)(6) motion. This offer is referenced in the pleadings, is integral to the Complaint, and may therefore be considered as part of that motion.

letter contemplated that Westphal would be a Washington-based employee, as it stated that "you will primarily work out of your home office in the Pasco, WA area …" (Oct. 4, 2021 Offer Ltr.)

**C.      The Restrictive Covenant's Illegal Provisions.**

Nine days later, on October 14, 2021, he was asked by Wilkerson to sign a non-compete agreement. (Westphal Dec. ¶ 16).  This request occurred *after* he had already accepted his new position on October 5, 2021, and was *the first instance* of anyone at Permobil apprising him that execution of a noncompete would be required. (*Id.*).  Westphal called Wilkerson to ask questions about the noncompete. (*Id.* ¶ 17).  Specifically, he asked whether Washington state law or Tennessee state law would apply to the agreement. (*Id.*).  Wilkerson represented to him that the law of the state in which he lived would apply. (*Id.*).  Relying upon that representation, he signed the agreement. (*Id.* ¶ 19).  He did so from his home in Washington. (*Id.*).

The restrictive covenant's date is significant. (*See* Compl. ¶ 7(a); Ex. A to Compl.).  October 14, 2021 was nearly *two years* after Washington law forbade employers from requiring employees residing in that state to submit to restrictive covenants with clauses selecting forums outside of Washington. *See* R.C.W. § 49.62.050.  Despite the clear intent of Washington law, and contrary to Wilkerson's representations, the restrictive covenant ostensibly mandates that:

- Westphal "irrevocably submit to the exclusive jurisdiction of any federal court sitting in the Middle District of Tennessee, or any state court in Wilson County, Tennessee over any suit, action dispute or proceeding arising out of or relating to this Agreement …," and

- That Westphal commence any action related to this restrictive covenant "in the courts of the State of Tennessee, federal or state."

(Compl. Ex A, ¶6(E)).  The agreement states that, "[e]ach of the parties hereto hereby irrevocably waive, *to the fullest extent permitted or not prohibited by the law,* any objection which it may now or hereafter have to the laying of the venue of such suit, action or proceeding brought in such a court …" (*Id.*) (emphasis added).  The covenant also has a Tennessee choice of law clause. (*Id.*).

4

**D.      Permobil Fails to Execute the Restrictive Covenant and Non-Disclosure Agreement.**

The restrictive covenant on file has Westphal's signature. (*See id.* at p. 8).  That document, however, is not executed by Permobil. (*See id.*).  No one from the company signed or dated this restrictive covenant. (*Id.*).  While there is a designated space in the contract for a Permobil representative to sign and date the covenant, that space is empty. (*See id.*).  Thus, in addition to attempting to enforce an agreement that is facially illegal, Plaintiff is also attempting to enforce an agreement that it did not execute.  Permobil also presented Westphal with a Non-Disclosure Agreement on October 14, 2021.  Permobil did not sign that agreement either. (*See* Compl. Ex. B).

**E.      The Restrictive Covenant's Lack of Independent Consideration.**

With respect to consideration, the Complaint pleads that, "As a condition to Westphal's promotion to Greenfield Services Workstream Lead, and his being granted access to the highly confidential business information that was part of Project Greenfield, Westphal executed" the restrictive covenant, along with a separate confidentiality agreement." (Compl. ¶ 31).  Nowhere does the Complaint state that he received independent consideration for signing either one of these agreements. (*See id.*).  From reading the Complaint, one is left to guess whether Westphal received additional monies, and if so, how much was in consideration for taking on new responsibilities on Project Greenfield, how much was for signing the restrictive covenant, and how much was for signing the confidentiality agreement. (*See id.*).

Mirroring the Complaint, the restrictive covenant is silent on independent consideration. (*See* Compl., Ex. A).  The restrictive covenant states that "the Company desires to continue to *retain* the services and employment of the Employee, and the Employee desires to *continue* Employees services and employment with the Company in the role of Greenfield Services Team Member …" (*Id.* at p. 1) (emphasis added).  Similarly, Paragraph 1 of the restrictive covenant states the "Employee agrees to *continue* such employment." (*Id.* ¶ 1) (emphasis added).  According to the

5

contract drafted by Permobil, *continued employment* is the purported consideration. (*Id.*).[2]

**F.      Permobil Asks Westphal to Sign a New Restrictive Covenant.**

On April 4, 2023, Lori Cox, another Human Resources Manager at Permobil, sent all members of Project Greenfield a document entitled "Permobil Agreement - NGTL." (Westphal Dec. ¶ 20; Cox April 4, 2023 email).  Cox apprised all of these team members that they would be required to enter into a restrictive covenant. (*See* Apr. 4, 2023 Cox email).  This email included an attachment entitled "NGTL Non-Compete Employment Agreement." (*Id.*).  Cox stated that, "these agreements are also designed to benefit you." (*Id.*).  The email is silent on any independent consideration anyone would receive in exchange for signing the agreement. (*Id.*).

Unlike the restrictive covenant upon which Permobil has filed suit in this matter, the "NGTL Non-Compete Employment Agreement" tries to take Washington State law into account. (*See* NGTL Non-Compete Employment Agreement).  It contains an appendix for Washington State providing that the agreement will not be enforceable against an employee making less than $116,593.18 – i.e., an effort to comply with the WNA's minimum salary requirement. (*Id.* at 17).  Notably, it states that "*the choice of law and choice of venue provisions in Section 5.E shall not apply, and Washington law will apply instead.*" (*Id.*) (emphasis added).  As of April 4, 2023, it appears that Permobil was fully aware that Washington state law precluded the enforcement of an out-of-state choice of law provision against a Washington-based employee. (*See id.*).

Westphal replied to Cox's email by asking, "I am confused as to why there is a new employment agreement being sent out. I signed one when I joined the team in November 2021. Can

---

[2] The restrictive covenant sets forth Westphal's base salary of $124,271 per year. (Compl. Ex. A, ¶ 2(a). Neither the Complaint nor the agreement states whether this was a raise from his previous salary. (*Id.*).   Nor does the Complaint plead whether Westphal was apprised of the need to execute the noncompete agreement prior to agreeing to work in this new position. (*See* Compl.).  The restrictive covenant specifies bonuses for which Westphal "may be eligible" if Project Greenfield achieves certain "milestones." (Compl., Ex. A at ¶ 2(b)). These potential bonuses are not guaranteed and appear to be contingent upon project's success, rather than being paid as independent consideration for signing the covenant. (*See id.*).

6

you let me know?" (Westphal Dec. ¶ 22; Westphal/Cox Email Chain). Cox replied by representing that, "An audit was done and there was not a copy of a signed agreement in your file. This is possibly a new version as it was given to me by Legal in March." (*Id.*). Westphal did not execute the new agreement. (Westphal Dec. ¶ 23).

**G.    Westphal's April 14, 2023, Resignation.**

Relying upon Permobil's representation that an audit had found that he did not have a restrictive covenant on file, Westphal accepted a job offer to work at Sunrise Medical. (Westphal Dec. ¶ 24). And in any event, Westphal had become well-versed in the WNA and believed that the restrictive covenant was likely illegal. (*Id.*). On April 14, 2023, he tendered his resignation. (*Id.* ¶ 25). During his two-week notice period, he worked to help his projects get transitioned in an orderly fashion. (*Id.*). Westphal's last day of employment was April 28, 2023. (*Id.* ¶ 26). On April 26, 2023, Cox had a meeting with Westphal. (*Id.*). Cox apprised him that (contrary to her past representations) Permobil did in fact have a restrictive covenant on file for him. (*Id.*).

**H.    Permobil Files Suit.**

On June 9, 2023, Permobil filed its lawsuit against Westphal. (*See* Compl.). Permobil advances four separate counts against this individual defendant: (1) breach of contract related to the restrictive covenant; (2) breach of contract related to the NDA; (3) violation of the Tennessee Uniform Trade Secrets Act ("TUTSA") and (4) violation of the federal Defend Trade Secrets Act ("DTSA"). (Compl. ¶¶ 86-144). The company seeks "compensatory, punitive, exemplary, and any other appropriate statutory damages against Westphal in an amount to be proven at trial," along with attorneys fees and costs. (*Id.* at pp. 30-31). Permobil avers that venue is proper before this Court because "Westphal submitted to jurisdiction and venue in this Court under the terms of certain of the contracts at issue in this matter …" (Compl. ¶ 4). The Complaint is devoid of any allegations – express or inferential – on why the WNA's prohibitions do not apply to this contract.

7

## II.    ARGUMENT

**A.    The Restrictive Covenant Is Void and Unenforceable.**

**1.    The WNA's Limitations on Restrictive Covenants.**

The WNA significantly limits the use of forum selection clauses in restrictive covenants. *See* RCW § 49.62.05, et al.[3]  It forbids restrictive covenants that require a Washington resident to submit to an out-of-state forum selection clause.  The law provides that:

> A provision in a noncompetition covenant signed by an employee or independent contractor who is Washington-based is *void and unenforceable*:
> (1) *If the covenant requires the employee or independent contractor to adjudicate a noncompetition covenant outside of this state*; and
> (2) To the extent it deprives the employee or independent contractor of the protections or benefits of this chapter.

RCW § 49.62.050 (emphasis added).

The Act goes on to provide that a "noncompetition covenant is void and unenforceable against an employee … [u]less the employer discloses the terms of the covenant in writing to the prospective employee *no later than the time of the acceptance of the offer of employment* …" RCW § 49.62.020(1)(a)(i) (emphasis added).  A noncompetition covenant is also "void and unenforceable" where "the covenant is entered into after the commencement of employment, *unless the employer provides* <u>independent consideration</u> *for the covenant*." *Id.* at (1)(a)(ii) (emphasis added).  By the plain language of this Act, continued employment is insufficient.

An employer who requires a Washington resident to submit to a restrictive covenant with an out-of-state forum selection clause exposes itself to significant statutory penalties:

> **Violation of this chapter—Relief—Remedies.**
> (1) Upon a violation of this chapter, the attorney general, on behalf of
>     a person or persons, may pursue any and all relief.  A person

---

[3] The statute opens by stating that, "the legislature finds that workforce mobility is important to economic growth and development." RCW § 49.62.05.  "This chapter is an exercise of the state's police power and shall be construed liberally for the accomplishment of its purposes." RCW § 49.62.110.

8

aggrieved by a noncompetition covenant to which the person is a party may bring a cause of action to pursue any and all relief provided for in subsections (2) and (3) of this section.

(2) If a court or arbitrator determines that a noncompetition covenant violates this chapter, the violator *must* pay the aggrieved person the greater of his or her *actual damages* or *a statutory penalty of five thousand dollars*, plus *reasonable attorneys' fees, expenses, and costs* incurred in the proceeding.

(3) If a court or arbitrator reforms, rewrites, modifies, or only partially enforces any noncompetition covenant, the party seeking enforcement *must* pay the aggrieved person the greater of his or her *actual damages* or a *statutory penalty of five thousand dollars*, plus *reasonable attorneys' fees, expenses, and costs* incurred in the proceeding.

RCW § 49.62.080 (emphasis added).[4]

## 2.      The Restrictive Covenant Violates the WNA in at Least Four Respects.

The restrictive covenant is plagued by a host of flaws. The contract is unenforceable under the WNA, and woefully so.

First, the covenant is void and unenforceable because it purports to require Westphal – a Washingtonian – to "irrevocably submit to the exclusive jurisdiction" of Tennessee and litigate any disputes regarding the agreement in this state. (*See* Compl., Ex. A at ¶ ¶6(E)). Requiring a Washington-based employee to submit to such a clause was a *per se* violation of the Act, giving rise to an award of fees and a $5,000 penalty. RCW § 49.62.050, 49.62.080. The restrictive covenant is "void and unenforceable" because it "requires the employee … to adjudicate a noncompetition covenant outside of this state." RCW § 49.62.080(1).

Second, the contract is further void because it attempts to "deprive[] the employee or ... of the protections or benefits of this chapter." RCW § 49.62.050(2). The contract demands that its enforceability be "construed in accordance with, the laws of Tennessee, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the law of any

---

[4] Courts have indeed enforced this damage and penalty provision. *See, e.g., Wellspring Family Servs. v. Neem*, 2021 Wash. Super. LEXIS 3222, *1 (Wash. Super. Ct. King County, May 28, 2021) (entering judgment of $29,800 in fees and costs and a $5,000 under RCW § 49.62.080)

9

other jurisdiction." (Compl., Ex. A at ¶ ¶6(E)).   But the WNA has numerous "protections and benefits" not available under Tennessee law.   These include: (1) a minimum salary requirement, adjusted annually for inflation; (2) the right to be apprised of the need to sign a restrictive covenant *before* agreeing to a position; (3) the right to be given independent consideration for a covenant; and (4) the right not to be hauled across the country to defend a noncompete action. RCW §§ 49.62.020(1)(a)(i), 49.62.050, 49.62.080.   In its efforts to subject Westphal to Tennessee noncompete law, Permobil attempts to deprive him of the "protections or benefits" of the WNA – another *per se* violation of RCW § 49.62.050.

Third, the covenant is also "void and unenforceable" because it was entered into years after Westphal's "commencement of employment" with Permobil, yet the company failed to "provide[] *independent consideration* for the covenant." RCW § 49.62.020(1)(a)(ii) (emphasis added).   Rather that say anything about independent consideration, the plain language of the contract states that the purported consideration supporting the noncompete is continued employment.   The covenant states "the Company desires to continue to *retain* the services and employment of the Employee, and the Employee desires to *continue* Employees services and employment with the Company in the role of Greenfield Services Team Member …" (Compl., Ex. A at p. 1) (emphasis added).   A contract is construed against the drafter.   The contract upon which Permobil sues lists continued employment as the alleged consideration – something that does not suffice under the WNA.

Fourth, the contract is even more "void and unenforceable" because Permobil failed to "disclose the terms of the covenant in writing to the prospective employee" prior to his "acceptance of the offer" to become a Greenfield Services Team Member. RCW § 49.62.020(1)(a)(i) (emphasis added).   Permobil offered him this position on October 4, 2021. (*See* Oct. 4, 2021 Offer Ltr.).   That letter said nothing about a restrictive covenant. (*Id.*).   Westphal accepted this offer on October 5, 2021. (*Id.*).   It was not until October 14, 2021 – nine days after he had accepted the offer – that

Permobil apprised Westphal that he would be required to sign a noncompete in this new role. (Westphal Dec. ¶ 16). Waiting until after he had accepted this offer to present him with a restrictive covenant was yet *per se* another violation of the WNA.

The covenant that Permobil attempts to enforce is a posterchild for the types of noncompete agreements that the Act sought to preclude. If Washington law is applied to this matter, the covenant is most certainly unenforceable.

### 3. Washington Law Applies.

"Tennessee follows the rule of *lex loci contractus*. This rule provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (citing *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973)). A choice of law clause will be honored provided certain requirements are met." *Id.* However, "[t]he choice of law provision must be *executed in good faith*." *Id.* (citing *Goodwin Bros. Leasing, Inc. v. H & B Inc.*, 597 S.W.2d 303, 306 (Tenn. 1980)) (emphasis added). "The basis for the choice of another jurisdiction's law must be *reasonable* and not merely a sham or subterfuge. *Id.* Finally, "the choice of another jurisdiction's law must not be *contrary to a fundamental policy of a state having a materially greater interest and whose law would otherwise govern*." *Id.* (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971)) (emphasis added).

The contract was executed in Washington. That is where Westphal worked and signed the noncompete. (Westphal Dec. ¶ 19). No one from Permobil executed the document. (*See* Compl., Ex. A). Pursuant to the rule of *lex loci contractus,* Washington is presumed to govern the noncompete, absent an enforceable choice of law clause.

An enforceable choice of law clause is not present here. The noncompete's choice of Tennessee law is directly "contrary to a fundamental policy of a state having a materially greater

interest and whose law would otherwise govern" – i.e., Washington. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971)). Washington provides employees with key protections that are not available here – the right to (1) not to be subjected to an out-of-state forum selection clause; (2) be apprised of a restrictive covenant prior to accepting a job offer; (3) to be given independent consideration for that covenant; and (4) not be hauled to another state in violation of the Act. *See* RCW § 49.62.05, et al. These policies are certainly "fundamental" to the state of Washington. The WNA was passed under the state's police powers, the state Attorney General is charged with enforcing the Act, and violators are subjected to fees and penalties. Washington has a "materially greater interest" in this matter. One of its citizens was required to execute an out-of-state forum selection clause (in plain violation of its laws), has been sued on that clause (a separate violation), and now possesses causes of action under the WNA against Permobil. Washington's Attorney General has jurisdiction to investigate these violations. Washington has significant interest in this matter, an interest that is by far materially greater than Tennessee's.

Furthermore, execution of the choice of law clause was neither reasonable nor in good faith. Again, Permobil only apprised Westphal of its demand that he execute the noncompete *after* he had accepted his new position. (Westphal Dec. ¶ 16). Westphal only signed the covenant *after* Permobil told him that Washington law would apply. (*Id.* ¶ 19). Adding insult to injury, Permobil is now trying to enforce a forum selection clause that it seemingly knows is problematic under Washington law. (*See* NGTL Non-Compete Employment Agreement).

Washington law applies. That law renders the restrictive covenant null and void.

## 4. Even if Tennessee Law Applied, the Covenant Would Still Be Unenforceable.

Tennessee contract law disfavors enforcement of the restrictive covenants. "In general, covenants not to compete are disfavored in Tennessee. These covenants are viewed as a restraint of trade, and as such, are *construed strictly in favor of the employee*." *Murfreesboro Medical Clinic,*

*P.A. v. Udom*, 166 S.W.3d 674, 678 (Tenn. 2005) (citing *See Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471, 472 (Tenn. 1984)) (emphasis added). Amongst other factors, courts consider "the consideration supporting the covenant," the "economic hardship imposed on the employee by the covenant" and "whether the covenant is inimical to the public interest." *Id.* (citing *Hasty,* 671 S.W.2d at 472*; Allright Auto Parks, Inc. v. Berry*, 409 S.W.2d 361, 363 (1966)). Importantly, "[i]t is well settled that the courts of Tennessee will not enforce obligations arising out of a contract or transaction *that is illegal*." *Ledbetter v. Townsend*, 15 S.W.3d 462, 464 (Tenn. Ct. App. 1999) (citations omitted) (emphasis added).

Even if Tennessee law were applied, strictly construing the covenant in favor of Westphal would result in a finding of unenforceability. Tennessee courts do not enforce illegal contracts. Yet the instant contract is illegal in numerous respects – its forum selection clause is a *per se* violation of the WNA; he was given no consideration for the noncompete; and he was not told about the noncompete before accepting his new job. RCW § 49.62.050, § 49.62.020(1)(a)(i). The "economic hardship" that would be imposed upon Westphal would be massive, should the covenant be enforced. Not only would he be required to litigate far from home, at great expense, he would also be precluded from earning a living in his chosen field. The covenant is "inimical to the public interest." That Washington has expressed a strong public interest against covenants like the instant one is not in doubt. Permobil's attempt to enforce the covenant violates the WNA, has given rise to strict liability for fees and penalties, and may result in an Attorney General investigation.

Even under Tennessee law, the noncompete is unenforceable.

**B.     The Forum Selection Clause Is Invalid.**

**1.   The Forum Selection Clause Violates the Clear Public Policy of the WNA.**

The Sixth Circuit has held that a forum selection clause is unenforceable where, as here, it violates a state statute prohibiting forum selection clauses. *Lakeside Surfaces, Inc. v. Cambria Co.,*

13

16 F.4th 209 (6th Cir. 2021). Plaintiff Lakeside Surfaces, Inc., was a fabricator of stone countertops in Michigan. *Id.* at 212. Defendant Cambria Company was a Minnesota company and a leading nationwide manufacturer of the stone slabs used to make countertops. *Id.* The parties executed a series of agreements, collectively titled the "Business Partner Agreements." *Id.* Germane to this action, the agreement stated that it would be governed by Minnesota law, and that any disputes regarding the agreement were to be brought in Minnesota. *Id.* at 212-213. In 2018, Cambria terminated the agreements. *Id.* at 213. Cambria filed suit in Michigan alleging breach of contract and violations of the Michigan Franchise Investment Law ("MFIL"). *Id.* at 214. Lakeside moved to dismiss on the grounds of *forum-non-conveniens*, citing the agreement's forum selection clause that provided such claims must be brought in Minnesota. *Id.*

A party can defeat the presumption that a forum election clause is enforceable "by showing that (1) *the clause was obtained by fraud, duress, or other unconscionable means*; (2) the designated forum would ineffectively or unfairly handle the suit; (3) the designated forum would be so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust; or (4) enforcing the forum selection clause *would contravene a strong public policy* of the forum state." *Id.* at 219-220 (emphasis added) (citing *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009); *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995)). Lakeside argued that enforcing the forum-selection clause would contravene a strong public policy of Michigan because the MFIL renders "void and unenforceable" any provision in a franchise agreement "'requiring that … litigation be conducted outside this state.'" *Id.* at 220 (quoting MCL § 445.1527(f)). "Lakeside's position, then, is straightforward and intuitive; *Michigan's policy could not be clearer* and *enforcing the forum-selection clause here would violate that policy*." *Id.* (emphasis added). The court agreed, holding that "the MFIL's prohibition on forum-selection clauses is a strong Michigan public policy and that enforcing the forum-selection clause here would clearly contravene that policy." *Id.* at 220-221

(citing *See Davis v. Oasis Legal Fin. Operating Co.*, 936 F.3d 1174, 1178-79 (11th Cir. 2019); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497-98 (9th Cir. 2000).[5]

The forum selection clause in the instant covenant violates a strong public policy of the state where Westphal lives and works.  There can be no debate that it violates Washington law.  *See* RCW § 49.62.050, 49.62.080.  Nor can there be any doubt that Washington's law touches upon a "strong public policy" of the state.  Violations of the Act's provisions result in a mandatory imposition of fees and penalties upon the offending company.  The forum selection clause further violates Tennessee's public policy.  Restraints on trade are "disfavored in Tennessee," *Udom*, 166 S.W.3d at 678, and our courts "will not enforce obligations arising out of a contract or transaction that is illegal." *Ledbetter,* 15 S.W.3d at 464.

The forum selection clause violates the strong public policy of the WNA.  It further violates Tennessee's public policy against enforcing illegal contracts.  It should not be enforced.

## 2.  The Clause Was Obtained by Fraud and Other Unconscionable Means.

In the Sixth Circuit, forum selection clauses will only be upheld if they are fair and reasonable. *Hassinger Corp. v. Activant Solutions Inc.*, 2010 U.S. Dist. LEXIS 67198, *4 (E.D. Tenn. Jul. 7, 2010); *see also Union Planters Bank, N.A. v. EMC Mortgage Corp.*, 67 F. Supp. 2d 915, 919 (W.D. Tenn. Oct. 19, 1999) (citing *Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369, 374-75 (6th Cir. 1999)). When determining reasonableness, the Sixth Circuit considers whether the clause was obtained by fraud, duress, abuse of economic power, or unconscionable means. *Id.* at

---

[5] Cambria attempted to sidestep the fact that the forum selection clause was illegal under Michigan law by arguing that because the parties' agreement chose Minnesota law to govern their dispute. *Id.* at 221.  While the MFIL flatly prohibited forum-selection clauses, it was silent on choice of law clauses. *See id.* at 222. Thus, Cambria opined that under agreement Minnesota law applied, and thus the MFIL's prohibition on choice of law clauses was inapplicable to agreement.  The Sixth Circuit rejected this argument, holding that "accepting Cambria's position that the choice-of-law provision makes the MFIL's forum-selection-clause prohibition irrelevant and would prevent the parties from litigating in Michigan." *Id*.  The court refused to entertain this illogical outcome.  As such, the court held that "enforcing the forum-selection clause would contravene a strong public policy of the forum state," and thus the "forum-selection clause is thus unenforceable." *Id.*

4-5 (internal citations omitted).

In the pending matter, the forum selection clause is unenforceable because "the clause was obtained by fraud, duress, or other unconscionable means." *Lakeside Surfaces,* at 219-220. Westphal accepted the Greenfield Services Workstream Lead position on October 5, 2021. (Westphal Dec. ¶ 15; Oct. 4, 2021 Offer Ltr.). Prior to accepting this new position, no one at Permobil ever mentioned that entering into a restrictive covenant would be a condition of this promotion. (Westphal Dec. ¶ 14). Nor did the offer letter say anything about a noncompete. (*See* Oct. 4, 2021 Offer Ltr.). After being asked nine days later to sign a non-compete, Westphal asked Wilkerson whether Washington law would apply to the proposed restrictive covenant, or Tennessee law. (*Id.* ¶ 17). Permobil's agent represented that Washington law would apply. (*Id.*). Only after that representation did Westphal sign the noncompete, as he knew that his home state provided greater protections for employees subject to restrictive covenants. (*Id.*).

A plaintiff establishes a *prima facie* case for fraudulent misrepresentation upon a showing of: (1) a defendant making a false representation knowingly or recklessly; (2) detrimental reliance on that false premise, and (3) reasonable reliance upon the defendant's representation. *Johnson v. Dattilo*, 2011 Tenn. App. LEXIS 387, *22-23 (Tenn. Ct. App. July 14, 2011) (citations omitted). When there is a showing that fraud or misrepresentation induced the party opposing a forum selection clause to agree to inclusion of that clause in the contract, that clause will not be enforced. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974).

Westphal can very easily establish a *prima facie* case of fraudulent misrepresentation and show the fraudulent misrepresentation was specific to the forum selection clause. Wilkerson's representation to Westphal that Washington law would apply to the restrictive covenant was false (at least in the company's eyes, given that it has now filed suit here). Wilkerson was a Human Resources Manager. Even if her statement was not knowingly false, it was most certainly reckless.

16

Westphal relied upon that representation, and reasonably so. Wilkerson is an HR expert; Westphal is not. Moreover, the forum selection clause states that its waiver only went so far as "permitted or not prohibited by the law." (Compl. Ex A, ¶6(E)). Given that the law of the state in which he lived precluded forum selection clauses, it was reasonable for Westphal to rely upon an agent's representation that Washington law would apply to the noncompete.

The unconscionability of Permobil's conduct speaks for itself. At no point prior to signing the October 4, 2021 offer letter had it raised the possibility of Westphal being required to sign a noncompete as part of his acceptance of this new job. Only *after* he signed that agreement did it raise this possibility. When it did so, the proposed covenant: (1) included a forum selection clause that had been illegal for nearly two years; and (2) did not include independent consideration, as required under Washington law. To induce Westphal to sign this noncompete, Permobil represented that his state's law would apply to the agreement. This is the essence of unconscionability.

The forum selection clause upon which Permobil sues was obtained by fraud and unconscionable means, providing yet another reason why that clause is unenforceable.

### 3. The Forum Selection Clause's Own Language Renders It Inoperable Here.

Even if it had not been obtained via fraud, Permobil's attempt to use to use the forum selection clause to proceed in this forum would still fail. The agreement states that, "[e]ach of the parties hereto hereby irrevocably waive, *to the fullest extent permitted or not prohibited by the law,* any objection which it may now or hereafter have to the laying of the venue of such suit, action or proceeding brought in such a court …" (Compl. Ex A, ¶6(E)) (emphasis). Pursuant to its plain language, its forum waiver only operates "to the fullest extent permitted or not permitted" by the law. The WNA specifically prohibits both requiring Westphal to agree to a forum selection clause *and* enforcement of that clause. RCW § 49.62.050, 49.62.080. "Tennessee courts adhere to the general rule that ambiguities in a contract are construed against the drafter." *Crye-Leike v. Carver*,

17

415 S.W.3d 808, 816 (Tenn. Ct. App. 2011). By the covenant's own terms, it only reaches as far as the law allows. The WNA does not allow Westphal to waive his objections to an improper venue, adding yet another reason why Permobil's reliance upon the forum selection clause fails.

**C.      Multiple Reasons Exist for Dismissal.**

**1.      The Case Should be Dismissed for Improper Venue.**

Since the forum selection clause is unenforceable, typical considerations of improper venue and *forum non conveniens* apply to this motion. Those interests of justice, fairness, and oppressiveness to Westphal all militate towards dismissal, and strongly so.

Cases filed in an improper venue are subject to dismissal under Fed. R. Civ. P. 12(b)(3). A court may "dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would *establish <u>oppressiveness and vexation to a defendant</u> out of all proportion to plaintiff's convenience*, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422 (2007) (emphasis added). Dismissal for *forum non conveniens* "reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Id.* The Supreme Court has characterized *forum non conveniens* as, "essentially, a supervening venue provision, permitting displacement of the ordinary rules of venue when, *in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.*" *Id.* (quoting *American Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)). A district court may dispose of an action by a *forum non conveniens* dismissal, "bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, <u>*fairness*</u>, and judicial economy so warrant." *Id.* (emphasis added).

"[A] federal trial court may decline to exercise its jurisdiction, even though the court has

jurisdiction and venue, when it appears that the convenience of the parties and the court and the *interests of justice indicate that the action should be tried in another forum*." *Associacao Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 618 (6th Cir. 2018) (emphasis added). The Sixth Circuit uses a three-part test: "[1] the court determines the degree of deference owed the plaintiff's forum choice, the defendant carries the burden of [2] establishing an adequate alternative forum and [3] showing that the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests." *Id.* at 618-19.[6]

"Interests of justice," "fairness," and "oppressiveness and vexation to" this individual defendant all demand that this case be dismissed. It was illegal to require Westphal to submit to an out-of-state forum selection clause. *See* RCW § 49.62.050, 49.62.080(i). On top of that, Permobil's attempt to enforce this clause is a second violation of the WNA. *See* RCW § 49.62.080(iii). The state in which Westphal resides – where he signed the covenant and where he is allegedly competing – makes it abundantly clear that Permobil's attempts to enforce this covenant fly in the face of Washington law. That state feels so strongly about this statute that it has empowered the state Attorney General to investigate practices, such as the ones at issue here. Attempting to demand that this individual defendant to fly across the country based upon an illegal forum selection clause is the height of "oppressiveness and vexation."

Turning to the first element of the Sixth Circuit's three-part test, no "degree of deference" whatsoever is "owed the plaintiff's forum choice." *Stryker Corp.*, 891 F.3d at 618. It is bad enough that Permobil's request that he sign the forum selection clause in October 2021 had been illegal for nearly two years. Adding to interests related to fairness and justice, Westphal: (1) was not told prior to accepting his promotion that a noncompete would be required; (2) only agreed to sign the

---

[6] In deciding a motion to dismiss for improper venue, it is well-established that the "court may examine facts outside the complaint to determine whether venue is proper." *E.P.A. ex rel. McKeown v. Port Authority,* 162 F.Supp.2d 173, 183 (S.D.N.Y.2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1352 (1990 & Supp. 1999)).

19

covenant after a Permobil agent represented to him that Washington law would apply to the contract; and (3) was not given independent consideration for the covenant. (*See* Westphal ¶¶ 13, 14, 16, 17, 18, 20). Even worse still, it appears that Permobil now knows the 2021 covenant violated Washington law. (*See* Cox April 4, 2023 email; NGTL Non-Compete Employment Agreement, at 17). Two months prior to filing suit, someone within the company was aware that the old covenant was problematic under WNA. (*See id.*). Rather than apprise Westphal that his past covenant was illegal under the WNA and the new one was crafted with that Act's limitations in mind, it instead: (1) attempted to sell him on the new covenant as being a "benefit" to him, (*see id.*) and (2) represented to him that it had no past covenant on file. (*See* Westphal/Cox email chain). No deference to Plaintiff's forum choice is owed when Permobil is not only seeking to enforce a forum selection clause that is illegal but is also well aware of its illegality.

As to the second element of "establishing an adequate alternative forum," the courts of Washington are more than adequate. Westphal lived there the entire time he worked for Permobil, working remotely for the last three years from his home. Washington is where he works now. Washington is where he is allegedly competing. Permobil has a large facility in the state, and its law firm of record has an office with 155 attorneys there.[7] Issues related to Washington law (i.e., the WNA) will play a key role in this dispute (be it in the instant litigation and Westphal's own coming claims). Washington is not just an adequate alternative form; given the key role that Washington law will play in the parties' disputes, it is the preferable forum.

Lastly, plaintiff's chosen forum is "unnecessarily burdensome based on public and private interests." As the WNA makes plain, public interests strongly weigh against the continuation of this matter here. That Act expresses a strong public policy against Washington citizens being hauled to a distant forum as part of a restrictive covenant. That statute was passed upon a finding "that

---

[7] *See* https://www.klgates.com/Seattle

workforce mobility is important to economic growth and development." RCW § 49.62.05. As for private interests, it is not as if Westphal was a C-suite executive earning a seven-figure salary at Permobil. His base salary was $124,271 per year. (Compl. Ex. A, ¶ 2(a)).[8] The five-hour flight from Seattle to here is not cheap, and as any Nashvillian can attest, hotel prices here have become exorbitant. While Westphal's resources are finite, Permobil is a large corporation, represented by sophisticated counsel with a large Seattle presence. Both public and private interests weigh in favor of dismissal under Rule 12(b)(3).[9]

## 2. The Complaint Fails to State a Claim.

Even if venue were somehow appropriate, dismissal would still be appropriate because the Complaint fails to state a plausible claim for relief.

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with defendant's liability … 'stops short of the line between possibility and plausibility' of 'entitlement to relief.'" *Id.* (quoting

---

[8] Indeed, a noncompete for an individual at Westphal's management level and salary appears to fall squarely within the types of restrictive covenants that the National Labor Relations Board just announced to be a violation of the National Labor Relations Act. *See* https://www.nlrb.gov/news-outreach/news-story/nlrb-general-counsel-issues-memo-on-non-competes-violating-the-national.

[9] Alternatively, this Court should transfer this case. Under 28 U.S.C. § 1404(a) a district court may transfer a civil action to another district in which the action could have been brought if both party and witness convenience and the interests of justice so demand. District courts have broad discretion to determine whether transfer is appropriate. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955); *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). A court's analysis in reviewing a motion to transfer is "flexible and individualized." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

*Twombly*, 550 U.S. at 557 (internal brackets omitted)). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires *more than labels and conclusions*." *Twombly*, 550 U.S. 555 (emphasis added). "[A] legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss," *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted), and mere recitation of the elements of a cause of action "or an *unadorned, the-defendant-unlawfully-harmed-me accusation" will not do. Iqbal*, 556 U.S. at 678.

      **a.   Permobil's Breach of Contract Count Regarding the Noncompete Fails.**

The restrictive covenant is "void and unenforceable" under the WNA, and Permobil's claims based upon that null document fail to state a claim. The case of *CVS Pharm., Inc. v. Brown*, 2021 U.S. Dist. LEXIS 49450, *3 (W.D. Was. Mar. 16, 2021) is directly on point in two legally significant ways. Timothy Brown worked for CVS as a "Chief Medicare Officer" for the Northwest and Mountain regions of the United States. *Id.* at *3. Brown was a Washingtonian. *Id.* at *2. Brown left to work for Cigna, a decision that CVS claimed to violate a restrictive covenant he signed in April 2019. *Id.* at *3. Mirroring the instant case, CVS averred that Brown possessed critical, confidential information on the company's business plans that would use to the CVS's detriment at his new employer. *Id.* at ** 6-7. CVS filed this case in Rhode Island, the location of its headquarters and place of incorporation. But the U.S. District Court in Rhode Island agreed with Brown that it lacked personal jurisdiction, and the matter was transferred to the state of his residence. *Id.* at *2.

CVS sought a temporary restraining order before the district court in Washington. The court denied the TRO, finding that CVS had failed to prove a likelihood of success on its breach of contract claim. First, the court held that "the Washington Noncompete Act *renders CVS's noncompete unenforceable* because it requires Brown 'to adjudicate a noncompetition covenant outside of' Washington." *Id.* at *12 (quoting RCW §49.62.050) (emphasis added). Second, the court held that CVS had not shown it was likely that he had received consideration for executing a

restrictive covenant during the middle of his employment. *Id.* at *16 (citing RCW § 49.62.020(1)(a)(ii)). While CVS claimed that it gave Brown – a current employee at the time of signing – additional consideration in the form of stock grants, the court found that, "[n]owhere in the award of this compensation in March 2019 did CVS state that he would also have to sign a noncompete the receive the [stock grants]." *Id.* at *16. Given that the covenant was not supported by independent consideration, it was void and unenforceable under the WNA. *Id.*

*Brown* is directly on point, and it is fatal to Permobil's breach of contract claim. First, as in *Brown,* the restrictive covenant purportedly requires Westphal to litigate disputes regarding that agreement in Tennessee. (Compl., Ex. A at ¶¶6(E)). Requiring Westphal to submit to such a clause violates the WNA and renders the agreement "void and unenforceable." RCW § 49.62.050, 49.62.080; *Brown*, 2021 U.S. Dist. LEXIS 49450, at *12.

Second, Permobil concedes that Westphal was a current employee at the time he signed the covenant on October 14, 2021. (*See* Compl. ¶¶ 8, 15). For the noncompete to be valid, the WNA required it to be supported by "independent consideration." RCW § 49.62.020(1)(a)(ii). Nowhere does the Complaint allege that "independent consideration" supports the restrictive covenant. (*See* Compl.). While post-*Twombly* labels and conclusions do not do, the Complaint does not even offer those with respect to independent consideration.

Third, under the WNA, a "noncompetition covenant is void and unenforceable against an employee … [u]less the employer discloses the terms of the covenant in writing to the prospective employee no later than the time of the acceptance of the offer of employment …" RCW § 49.62.020(1)(a)(i). The Complaint is devoid of any allegation that Westphal was told prior to accepting Permobil's offer to work as Greenfield Services Workstream Lead. (*See* Compl.). There is no plausible allegation on this legal requirement for enforceability, adding one more reason why the breach of contract claim fails.

23

Courts have dismissed breach of contract claims when the WNA rendered a noncompete "void and enforceable." *See, e.g., Sowa v. Ring & Pinion Serv.*, 2021 U.S. Dist. LEXIS 249678, *11 (W.D. Was. Sept. 9, 2021) (holding that lawsuit to enforce restrictive covenant failed to state a claim under RCW § 49.62, when the company attempted to enforce a contract against employee who did not earn more than $100,000 – a threshold requirement under the Act for enforcing such agreements). This Court should do so as well.

**b. The Claims Based on the NDA, the TUTSA, and the DTSA All Fail.**

Permobil's remaining counts fare no better. Counts II, III and IV of the Complaint are all based upon Westphal's supposed disclosure of confidential information. Count II alleges a violation of the NDA. (*See* Compl. ¶¶ 102-111). Count III asserts a violation of the TUTSA, averring disclosure of "confidential business information and strategies." (*Id.* ¶¶ 112-131). Count IV claims a violation of the DTSA, again based upon supposed disclosure of "confidential and property information." (*Id.* ¶¶ 132-144).

Critically, at no point does Permobil plead what exactly it contends Westphal has disclosed. Consider the verbiage used when trying to plead that confidential information has been disclosed:

- The NDA Claim: "*Upon information and belief*, Westphal has violated and continues to violate his obligations under the NDA by, among other things, disclosing Confidential Information relating to Project Greenfield to Sunrise Medical or other unauthorized third parties for the benefit of Sunrise Medical." (*Id.* ¶ 106) (emphasis added).

- The TUTSA Claim: "*Upon information and belief*, Westphal has misappropriated, or there is a significant threat that he will misappropriate, Permobil's trade secrets relating to Project Greenfield even though, by virtue of his execution of the Employment Agreement and NDA, his access to that information was acquired under circumstances that obligated him to maintain the secrecy of and limit his use of the information. (*Id.* ¶ 122) (emphasis added).

- The DTSA Claim: "*Upon information and belief*, Westphal has misappropriated, or there is a significant threat that he will misappropriate, Permobil's trade secrets relating to Project Greenfield even though, by virtue of his execution of the Employment Agreement and NDA, his access to that information was acquired under circumstances that obligated him to maintain the secrecy of the information and limit his use of the information. (*Id.* ¶ 135).

24

In other words, Permobil possesses no evidence that Westphal has disclosed anything to Sunrise Medical. Instead, it advances labels and conclusions based "upon information and belief." The lack of a plausible claim for disclosure of trade secrets is underscored by Permobil's allegation that, "*If* Westphal's knowledge of Permobil's trade secrets relating to Project Greenfield are shared with Sunrise Medical or any other competitor …" (Compl. ¶¶ 125, 137).

A mere recitation of the elements of a cause of action "or an unadorned, the-defendant-unlawfully-harmed-me accusation" will not do. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. That is precisely what Counts II, III and IV provide the Court – i.e., a recitation of the prima facie elements of claims under the NDA, TUTSA and DTSA; allegations "upon information belief" that confidential information has been disclosed without pleading what exactly or to whom; allegations of what might happen "if" a disclosure actually occurs; and boilerplate "the-defendant-unlawfully-harmed-me" paragraphs. Post-*Twombly,* this will not do.

**D.** **Permobil Is Strictly Liable for an Award of Westphal's Fees and Costs Incurred in Defending This Matter, and $10,000 in Statutory Penalties.**

The WNA imposes mandatory penalties and award of fees upon Permobil. Under the Act, given that Permobil required Westphal to submit to a noncompetition agreement that violates the act, it "*must* pay [Westphal] the greater of his or her actual damages or a statutory penalty of five thousand dollars, plus reasonable attorneys' fees, expenses, and costs incurred in the proceeding." RCW § 49.62.080(ii). And given that Permobil has attempted to enforce an invalid noncompete, it is liable for a second award of actual damages or a statutory penalty of $5,000, plus fees and costs. *Id.* § 49.62.080(ii). Two penalties are owed. An employer's lack of knowledge about the WNA is irrelevant (although Permobil plainly has such knowledge). Such damages "must" be awarded. *Id.*

### III.   CONCLUSION

Westphal respectfully moves for the dismissal of this matter in its entirety.

Respectfully Submitted,

/s/ Jonathan O. Harris
Jonathan O. Harris (TN Bar No. 21508)
John R. Adams (TN Bar No. 39284)
JACKSON LEWIS P.C.
611 Commerce Street, Suite 2803
Nashville, TN 37203
Telephone: (615) 565-1661
Fax: (615) 206-2244
Email: jonathan.harris@jacksonlewis.com
        john.adams@jacksonlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that, on June 23, 2023, I served a true and correct copy of the foregoing *Memorandum of Law in Support of Motion to Dismiss* via electronic mail, upon the following counsel of record:

Erin Palmer Polly
Gibeault "Beau" C. Creson
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
erin.polly@klgates.com
beau.creson@klgates.com

*Attorneys for Plaintiff*

/s/ Jonathan O. Harris

4856-3520-2156, v. 3

26