IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| PERMOBIL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:23-cv-586 |
| v. ) | |
| ) | Judge Campbell |
| MARK WESTPHAL, ) | Magistrate Judge Holmes |
| ) | |
| Defendant. ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO STAY

This matter should be stayed, pending the outcome of a Complaint filed by the National Labor Relations Board ("NLRB") addressing the illegal conduct of Permobil, Inc., ("Permobil") towards Mark Westphal, ("Defendant" or "Westphal").

As Westphal previously apprised the Court, the NLRB has found probable cause that Permobil's demand that he execute the 2021 restrictive covenant at issue here violated Section 7 of the National Labor Relations Act ("NLRA"). The NLRB has further found cause that Permobil's attempts to enforce that illegal contract violate Section 8 of the Act. On March 1, 2023, the Board filed a Complaint against Permobil, seeking to remedy the company's illegal conduct towards Westphal (and others). A trial will occur before an Administrative Law Judge ("ALJ"), who will issue a ruling on whether the covenant is enforceable under the NLRA. Either party can then appeal that ruling to the full Board and, eventually, a federal court of appeals.

A holding on whether or not the restrictive covenant is unenforceable under the NLRA could directly impact this litigation, and this case should be stayed accordingly. First, the litigation should be stayed under the doctrine of "primary jurisdiction." That doctrine "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory

scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Crain v. Blue Grass Stockyards Co.*, 399 F.2d 868, 872 (6th Cir. 1968). This doctrine is applicable here. Whether or not the restrictive covenant is enforceable under the NLRA has now been placed before the NLRB, an administrative body with special competence on this issue. Given the impact the NLRB ruling could have in this litigation, judicial efficiency and economy weigh towards staying this matter, pending a ruling on the Board's Complaint.

Second, this matter should also be stayed under the inherent discretion that this Court possesses to manage its docket in a manner that promote judicial efficiency. The Board has now found cause that the restrictive covenant is violative of the NLRA, and that Permobil's attempts to enforce that contract are a separate violation of the Act. It would make little sense to proceed with this instant litigation and continue to incur substantial costs on the same, when the viability of the Agreement underlying this case is ripe for resolution by the Board in a way that could ultimately impact the outcome of this case.

Westphal respectfully moves to stay this litigation, pending the outcome of the Board's Complaint against Permobil.

## STATEMENT OF FACTS

Permobil filed the instant action on June 9, 2023. (*See* Doc. No. 1). In this matter, Permobil purports to enforce a restrictive covenant signed by Westphal in 2021. (*See id.*). On June 23, 2023, Westphal filed a Motion to Dismiss. (*See* Doc. Nos. 12-13). In his motion, Westphal contends that the restrictive covenant is void and unenforceable under the Washington Non-Compete Act ("WNA"), and that Permobil's knowing and willful attempt to enforce that contract is a separate violation of the Act. (*See id.*). On July 21, 2023, Permobil responded to Westphal's arguments

under the WNA by filing a Motion for Preliminary Injunction, attempting to preclude him from working at Sunrise Medical. (*See* Docs. Nos. 19-21). On August 25, 2023, Westphal responded to that motion by asserting that Permobil's motion appeared to be motivated by retaliatory animus for voicing opposition to Permobil's violations of the WNA, and that in any event, Permobil had wholly failed to articulate the essential element of irreparable harm. (*See* Doc. No. 37). Each of these motions is still pending.

On August 31, 2023, Westphal filed an Unfair Labor Practice Charge with the NLRB. (*See* ULP Charge, attached as **Exhibit A**). In that Charge, Westphal asserted that Permobil had violated Section 7 of the NLRA by requiring him to submit to the non-competition agreement at issue in the current lawsuit, and further violated Section 8 of the Act by suing him under that unlawful contract. (*See id.*). On January 9, 2024, a Field Attorney for the NLRB apprised the parties that Westphal's Charge had been forwarded to the Board's Division of Advice "on the question of whether the Employer violated the Act by 1) requiring, as a term of employment, an employment agreement that constrained Section 7 rights and 2) filing a lawsuit to enforce that agreement." (*See* Jan. 9, 2024 McConnell email, attached as **Exhibit B**). On February 13, 2024, a Regional Director of the Board apprised Westphal's counsel that the NLRB has found merit to Westphal's Charge. Specifically, the Board has found probable cause that violations of the NLRA had occurred with respect to Permobil's requirement that Westphal sign the non-compete at issue here, and with respect to Permobil's filing of this lawsuit to enforce that restrictive covenant. The Board has found cause that numerous aspects of the restrictive covenant violate the NLRA, including but not limited to its provisions on non-competition, non-solicitation, and confidential information.

The Board provided Permobil with a period of time to consider whether or not it wishes to resolve the issues raised in Westphal's Charge. Those issues were not resolved. As such, on

March 1, 2024, the Board filed a Complaint against Permobil due to its violations of the NLRA with respect to its actions against Westphal. (*See* Board Complaint, attached as **Exhibit C**). In its Complaint, the Board seeks to: (1) invalidate the 2021 restrictive covenant at issue in the instant lawsuit due to the company's violations of the NLRA, (2) obtain a ruling from an ALJ and, if necessary a federal court of appeals, that Permobil's attempts to enforce the restrictive covenant against Westphal were a separate violation of the NLRA, and (3) invalidate all restrictive covenants that Permobil has entered into with any employee. (*See id.*).

The outcome of the Board Complaint will be highly relevant to the instant action. Indeed, it could be outcome determinative. If the Board prevails, there will be a ruling from the agency charged with enforcing labor rights and potentially a federal court of appeals, holding that the restrictive covenant that Permobil seeks to enforce is void and unenforceable. Such a holding would certainly impact this Court's consideration of whether or not Permobil is likely to succeed on merits of this lawsuit when ruling upon Permobil's Motion for Preliminary Injunction. Such a ruling would also directly impact on the actual merits of the current suit.

## ARGUMENT

**A.      This Matter Should Be Stayed Under the Doctrine of Primary Jurisdiction.**

The Board's ruling could directly impact this litigation. Under the doctrine of primary jurisdiction, this matter should be stayed pending an ultimate disposition of the Board Complaint.

"The doctrine of primary jurisdiction is a recognition of congressional intent to have matters of national labor policy decided in the first instance by the National Labor Relations Board." *Pace v. Honolulu Disposal Serv.*, 227 F.3d 1150, 1156 (9th Cir. 2000) (citations omitted). The Sixth Circuit has described this doctrine as follows:

> "The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with

> promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. *'Primary jurisdiction'*, on the other hand, applies where a claim is originally cognizable in the courts, and *comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views*.
>
> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation."

*Crain v. Blue Grass Stockyards Co.*, 399 F.2d 868, 872 (6th Cir. 1968) (quoting *United States v. Western Pac. R.R.*, 352 U.S. 59, 63-64 (1956)) (emphasis added). "The relevant case law dealing with primary jurisdiction may be summarized as follows: In most instances where rates, rules or practices are attacked as unreasonable or discriminatory the appropriate administrative agency should decide the question initially." *Id.* (citations omitted).

"This doctrine does not allocate the power between the courts and the administrative agencies, but rather governs only the question whether the court or the agency will initially decide a particular issue, not the question whether the court or the agency will finally decide the issue." *Terrell Oil Corp.,* 468 F. Supp. at 863 (citing 3 Davis, Administrative Law Treatise 3, § 19.01). "Accordingly, the pending action in the federal court is 'stayed until the administrative officials have had the opportunity to act with the hope that a *prior agency adjudication* of the dispute will be a *material aid in ultimately deciding*' the matters in the judicial forum." *Id.* at 864 (citing *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 302 (1973) (emphasis added). "Affording the

opportunity for administrative action will prepare the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court." *Id.*

As a sister court observed when analyzing the doctrine of primary jurisdiction in the NLRB context:

> As established in *Garmon*, Congress has created a centralized administration, the NLRB, to administer the policy of national uniformity in labor relations anticipated by the NLRA … Furthermore, the NLRB has special expertise and knowledge of the policy issues presented in this controversy. Exercise of jurisdiction by this Court at this time necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board, and this is what the 'arguably prohibited' branch of the *Garmon* doctrine was designed to avoid. In view of these considerations, the Court is of the opinion that judicial economy and the interests of justice will be best served by applying the doctrine of primary jurisdiction, and staying the exercise of this Court's jurisdiction at this time.

*Lintz v. Great Plains Beef Co.*, 1979 U.S. Dist. LEXIS 9510, *11-12 (D. Iowa 1979) (citing *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180 (1978)); *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236 (1959)).

Given that the NLRB, with its special expertise and knowledge on labor policy, has determined that the contract at issue violates federal law, this matter should be stayed pending the outcome of the proceedings before the Board and, if necessary, a federal court of appeals. The instant case involves an issue which, "under a regulatory scheme, ha[s] been placed within the special competence of an administrative body" – namely, is the restrictive covenant here violative of the NLRA. *Crain*, 399 F.2d at 872. Westphal has attacked Permobil's practices as discriminatory, in that he has alleged with the NLRB that the company's attempts to enforce the covenant are illegal and retaliatory under the NLRA. Affording the NLRB the opportunity to obtain a ruling on the legality of the contract at issue here "will prepare the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court."

*Terrell Oil Corp.,* 468 F. Supp. at 863. If an ALJ finds that the 2021 restrictive covenant is illegal under federal law, such a ruling would directly impact the instant litigation. Interests of judicial economy and efficiency weigh heavily in favor of a stay, pending the outcome of the Board proceedings.

Permobil may argue that the NLRB's position with respect to restrictive covenants and their interaction with the NLRA is relatively new. The Board' General Counsel announced on May 30, 2023, that in most circumstances, such agreements violate an employee's Section 7 rights under the NLRA. *See* https://www.nlrb.gov/news-outreach/news-story/nlrb-general-counsel-issues-memo-on-non-competes-violating-the-national. Permobil may contend that either the Board's interpretation of the NLRA is incorrect, or that its interpretation is inapplicable here. Such arguments, if made, will be unavailing.

When announcing the basis for "Garmon preemption," the Supreme Court held that "when an activity is *arguably subject* to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *Garmon*, 359 U.S. at 245 (emphasis added). Permobil may disagree on whether Section 7 of the NLRA applies to restrictive covenants. But the right to be free of such a restrain on trade is certainly "arguably subject" to the NLRA, in light of the Board's May 30, 2023, Memorandum. Whether the Board ultimately loses or prevails in its prosecution of its Complaint against Permobil is currently beside the point. The decision of an ALJ, the NLRB and ultimately a federal court of appeals – whatever that decision is – could directly impact the instant litigation. That ruling will allow the Court to make a more precise decision on the merits of this lawsuit and, in particular, the enforceability of the restrictive covenant at issue here.

That the Board's position on restrictive covenants is new only militates towards allowing the NLRB proceedings to reach a conclusion. As of now, the Court has little case law to look towards – one way or the other – on whether the covenant is illegal under the NLRA. Given the lack of such case law, it only makes more sense to stay these proceedings until an ALJ and, if necessary, a court of appeals weighs in on this legal question.

Pursuant to the doctrine of primary jurisdiction, Westphal moves to stay all deadlines in this litigation, pending the outcome of the NLRB's Complaint against Permobil.

**B.     Alternatively, this Court Should Stay this Litigation Under its Inherent Authority.**

Even if the doctrine of primary jurisdiction did not apply to this matter, a stay would still be appropriate under the Court's inherent power to manage its cases in a manner that leads to judicial economy and efficiency.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). "The entry of such an order ordinarily rests with the sound discretion of the District Court." *Ohio Envtl. Council v. U.S. Dist. Court, S.D. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1997). As Magistrate Judge Holmes recently noted, "'the power of a court to stay discovery is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Solomon v. Solomon*, 2022 U.S. Dist. LEXIS 89871, *2-3 (M.D. Tenn. 2022) (quoting *Nissan North America, Inc. v. DeltaWing Project 56, LLC*, 2015 U.S. Dist. LEXIS 160882, 2015 WL 7756146, at *2 (M.D. Tenn. Dec. 1, 2015). "Moreover, trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined. *Id.* (citing *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999)

and *Lubinski v. Hub Group Trucking, Inc.*, 2015 U.S. Dist. LEXIS 99522, 2015 WL 4603878, at *1 (W.D. Tenn. July 30, 2015)). "A stay of discovery for any reason is a matter ordinarily committed to the sound discretion of the trial court." *Id.* "Courts may stay discovery for 'good cause' to protect a party from undue expense or burden." *Id.*; *see also* Fed. R. Civ. P. 26(c)(1).

Good cause exists for staying this matter, pending the outcome of the NLRB proceedings. Again, the findings of an ALJ, the NLRB and potentially a federal court of appeals could be outcome determinative in this litigation. If the 2021 restrictive covenant is held to be a violation of the NLRA and unenforceable, it is difficult to conceive how Permobil could succeed on the merits of its claims under that contract. Permobil may argue that the NLRB process will take time, but consider the alternative if this matter is not stayed. A possible outcome in this matter could be for this Court to enter a preliminary injunction based upon the 2021 restrictive covenant and later a finding on the merits, only to have a federal court of appeals hold that the covenant is in fact void and unenforceable under federal law.[1] Such an outcome would cause great harm on Westphal. If he were to be sidelined from earning a living, the NLRB's finding many months later that the covenant was in fact unenforceable would be cold comfort.

A stay would impose little to no harm on Permobil. It has now been nine months since Permobil filed suit, and seven months since it filed is Motion for Preliminary Injunction. As set forth previously by Westphal, Permobil's fifty-nine (59) page motion gave exceedingly short shrift to the most essential element of a preliminary injunction – i.e., irreparable harm. (*See* Doc. No. 37 at 1-3, 4-9). Indeed, by waiting nearly three months after Westphal's resignation before seeking an injunction, Permobil engaged in a delay that, by itself, "fatally undermined" a showing of irreparable harm. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). In the

---

[1] Of course, Westphal contends is unenforceable for other reasons under the WNA, and that in any event Permobil has wholly failed to show the essential element of irreparable harm necessary for an injunction.

many months that have passed since briefing was completed on that motion, Permobil has come forward with no new evidence of any damage it has suffered by Westphal's subsequent employment, let alone irreparable damage. Instead, the status quo has stayed the same. Westphal could be significantly harmed in the absence of a stay during the pendency of the NLRB proceedings, whereas Permobil would suffer no harm.

The outcome of the NLRB proceedings will directly impact this litigation. This Court should use its inherent power to stay this case, pending the outcome of the NLRB Complaint.

## CONCLUSION

For the foregoing reasons, Westphal respectfully moves for a stay of this litigation, pending the outcome of the NLRB proceedings.

Respectfully Submitted,

*/s/ Jonathan O. Harris*
Jonathan O. Harris (TN Bar No. 21508)
John R. Adams (TN Bar No. 39284)
JACKSON LEWIS P.C.
611 Commerce Street, Suite 2803
Nashville, TN 37203
Telephone: (615) 565-1661
Fax: (615) 206-2244
Email: jonathan.harris@jacksonlewis.com
    john.adams@jacksonlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that, on March 1, 2024, I served a true and correct copy of the foregoing *Memorandum in Support of Defendant's Motion to Stay* via electronic mail, upon the following counsel of record:

Erin Palmer Polly
Jason Callen

K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
erin.polly@klgates.com
beau.creson@klgates.com

*Attorneys for Plaintiff*

               */s/ Jonathan O. Harris*

4862-3566-4298, v. 1