**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 19**


**PERMOBIL, INC.**

    **and**                                           **Case  19-CA-324895**

**MARK WESTPHAL, an Individual**


## COMPLAINT AND NOTICE OF HEARING

This Complaint and Notice of Hearing is based on a charge filed by Mark Westphal, an Individual ("Charging Party").  It is issued pursuant to § 10(b) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 151 *et seq*., and § 102.15 of the Rules and Regulations of the National Labor Relations Board (the "Board") and alleges that Permobil, Inc. ("Respondent"), has violated the Act as described below.

1.

(a)    The charge in this proceeding was filed by the Charging Party on August 31, 2023, and a copy was served on Respondent by U.S. mail on that same date.

(b)    The first amended charge in this proceeding was filed by the Charging Party on February 14, 2024, and a copy was served on Respondent by U.S. mail on that same date.

2.

(a)    At all material times, Respondent has been a state of Tennessee corporation with a principal place of business in Lebanon, Tennessee, and a facility in Pasco, Washington, where it has been engaged in manufacturing wheelchairs.

1

(b)     In conducting its business operations described above in paragraph 2(a) during the past 12 months, a period representative of all material times, Respondent derived gross revenue in excess of $500,000.

(c)     In conducting its operations described above in paragraph 2(a) during the past 12 months, which period is representative of all material times, Respondent purchased and received at its facility goods valued in excess of $50,000 directly from points outside the State of Washington.

(d)     At all material times, Respondent has been an employer engaged in commerce within the meaning of §§ 2(2), (6), and (7) of the Act.

3.

At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of § 2(11) of the Act and/or agents of Respondent within the meaning of § 2(13) of the Act, acting on behalf of Respondent:

Chuck Witkowski  -   President
Cody Verrett        -   Vice President of Business Development
Lori Cox            -   HR Business partner
Unnamed agents  -   Attorneys

4.

(a)     Since at least on or about October 14, 2021, Respondent has been requiring as a condition of employment that its employees sign an employment agreement ("Agreement") that contains the following provisions:

> (3)     … The Employee further acknowledges and agrees that [ ] the Company would not have entered into this Agreement but for the restrictive covenants of the Employee set forth in this Section [3]….

(3.B.) Non-Solicitation of Employees. During the Restricted Period [one year post-separation], Employee shall not: (i) participate, directly or indirectly, in or be materially involved in any manner in the hiring or any attempt to hire as an employee, officer, director, consultant, or advisor any person who is at the time of such hiring or attempted hiring, or was within six (6) months of such hiring or attempted hiring, an employee of the Company; or (ii) otherwise, directly or indirectly, induce or attempt to induce any employee of the Company to leave the employ of the Company.

(3.C.) Noncompetition. During the Restricted Period [one year post-separation], Employee shall not, within the United States of America, directly or indirectly, own, manage, operate, control, advise, be employed by, or materially participate in, or be materially involved in any manner with the ownership, management, operation, or control of any business or entity that competes with the Business. For purposes of this, "Business" shall be defined as manufacturing, marketing and selling complex rehabilitation devices and accessories.

(3.D.) Confidential Information. (i) The Employee acknowledges that all customer lists and information, vendor or supplier lists and information, inventions, trade secrets, know-how that is non-public, confidential or proprietary knowledge, information or data with respect to the products, services, operations, finances, business or affairs of the Company or with respect to confidential, proprietary or secret processes, methods, inventions, services, techniques, customers (including, without limitation, the specific nature of the services provided by the Company), employees (including, without limitation, the matters subject to this Agreement) or plans of or with respect to the Company or the terms of this Agreement (all of the foregoing collectively hereinafter referred to as, "Confidential Information") are property of the Company. The Employee further acknowledges that the Company intends, and makes reasonable good faith efforts, to protect the Confidential Information from public disclosure. Therefore, the Employee agrees that, except as required by law or regulation or as legally compelled by court order (provided that in such case, the Employee shall promptly notify the Company of such order, shall cooperate with the Company in attempting to obtain a protective order or to otherwise restrict such disclosure, and shall only disclose Confidential Information to the minimum extent necessary to comply with any such law, regulation or order), during the employment term and at all times thereafter, the Employee

shall not, directly or indirectly, divulge, transmit, publish, copy, distribute, furnish or otherwise disclose or make accessible any Confidential Information, or use any Confidential Information for the benefit of anyone other than the Company, unless and to the extent that the Confidential Information becomes generally known to and available for use by the general public other than as a result of the Employee's acts or omissions or such disclosure is necessary in the course of the Employee's proper performance of Employee's duties under this Agreement.

(3.F.) Non-disparagement. During the employment term and thereafter, the parties agree that they shall not, directly or indirectly, take any action, or encourage others to take any action, to disparage or criticize each other and, in the case of the Company or its respective employees, officers, directors, products, services, customers or owners. Nothing contained in this Section shall preclude the Employee from enforcing Employee's rights under this Agreement or truthfully testifying in response to legal process or a governmental inquiry.

(3.H.) Enforcement. The Employee acknowledges that a breach of Employee's covenants and agreements contained in this Section would cause irreparable damage to the Company, the exact amount of which would be difficult to ascertain, and that the remedies at law for any such breach or threatened breach would be inadequate. Accordingly, the Employee agrees that if Employee breaches or threatens to breach any of the covenants or agreements contained in this Section, in addition to any other remedy which may be available at law or in equity, the Company shall be entitled to: (i) institute and prosecute proceedings for specific performance and injunctive and other equitable relief to prevent the breach or any threatened breach thereof and (ii) an equitable accounting of all profits or benefits arising out of such violation.

(3.J.) Disclosure of Restrictive Covenants. The Employee agrees to disclose in advance the existence and terms of the restrictions and covenants contained in this Section to any employer during the Restricted Period [one year post-separation].

(3.K.) Extension of [the one year post-separation] Restricted Period. If the Employee breaches this Section [3] in any respect, the restrictions contained in this Section will be extended for a period equal to the period that the Employee was in breach.

(6.K.) The covenants set forth in Section 3 of this Agreement [Covenants of the Employee] and the provisions set forth in Sections 5 [Notices] and 6 [General] of this Agreement shall survive and shall continue to be binding upon the Employee notwithstanding the termination of this Agreement for any reason whatsoever.

(b)    On or about October 14, 2021, Respondent required the Charging Party, its employee, to sign an Agreement, which is annexed as Attachment A and contains the provisions set forth above in paragraph 4(a) in the Agreement's paragraph numbers noted.

(c)    On or about June 9, 2023, Respondent filed suit in U.S. District Court for the Middle District of Tennessee against the Charging Party to enforce the Agreement described above in paragraph 4(b).

(d)    Since on or about June 9, 2023, Respondent has maintained the lawsuit in U.S. District Court for the Middle District of Tennessee against the Charging Party to enforce the Agreement described above in paragraph 4(c).

5.

By the conduct described above in paragraph 4, Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in § 7 of the Act in violation of § 8(a)(1) of the Act.

6.

The unfair labor practices of Respondent described above affect commerce within the meaning of §§ 2(6) and (7) of the Act.

**WHEREFORE,** the General Counsel seeks, as part of the remedy for the unfair labor practices alleged above, an Order requiring Respondent to rescind the Agreement described above in paragraph 4 as to the Charging Party and every other employee,

past or present, made to sign such Agreement, and cease relying on the Agreement in any way, including the lawsuit described above in paragraphs 4(c) and 4(d).

**WHEREFORE,** the General Counsel seeks, as part of the remedy for the unfair labor practices alleged above, an Order requiring Respondent to withdraw any efforts and legal actions based on the Agreement described above in paragraph 4 and, specifically, to withdraw or seek to have vacated any injunctions or orders issued by the U.S. District Court for the Middle District of Tennessee in Respondent's lawsuit against the Charging Party.

**WHEREFORE,** as part of the remedy for the unfair labor practices alleged above, an Order requiring Respondent to reimburse the Charging Party for all legal and other expenses incurred in his defense against the lawsuit Respondent filed against him. The General Counsel further seeks all other relief as may be just and proper to remedy the unfair labor practices alleged.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to §§ 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the Complaint. The answer must be **received by this office on or before March 15, 2024.** Respondent also must serve a copy of the answer on each of the other parties.

The answer must be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov, click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions. Responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E-Filing system is officially determined to be in

technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. *See* § 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the Complaint are true.

## NOTICE OF HEARING

PLEASE TAKE NOTICE THAT, beginning at 9:00 a.m. on the **17th day of December, 2024, at a location to be determined in or around Pasco, Washington**, and on consecutive days thereafter until concluded, a hearing will be conducted before an administrative law judge of the National Labor Relations Board. At the hearing, Respondent and any other party to this proceeding have the right to appear and present

testimony regarding the allegations in this Complaint. The procedures to be followed at the hearing are described in the attached Form NLRB-4668. The procedure to request a postponement of the hearing is described in the attached Form NLRB-4338.

Dated at Seattle, Washington, this 1st day of March, 2024.

_Ronald K. Hooks_

Ronald K. Hooks, Regional Director
National Labor Relations Board, Region 19
915 2nd Ave., Ste. 2948
Seattle, WA 98174-1006

Attachments

# Procedures in NLRB Unfair Labor Practice Hearings

The attached complaint has scheduled a hearing that will be conducted by an administrative law judge (ALJ) of the National Labor Relations Board who will be an independent, impartial finder of facts and applicable law. **You may be represented at this hearing by an attorney or other representative.** If you are not currently represented by an attorney, and wish to have one represent you at the hearing, you should make such arrangements as soon as possible. A more complete description of the hearing process and the ALJ's role may be found at Sections 102.34, 102.35, and 102.45 of the Board's Rules and Regulations. The Board's Rules and regulations are available at the following link: www.nlrb.gov/sites/default/files/attachments/basic-page/node-1717/rules_and_regs_part_102.pdf.

The NLRB allows you to file certain documents electronically and you are encouraged to do so because it ensures that your government resources are used efficiently. To e-file go to the NLRB's website at www.nlrb.gov, click on "e-file documents," enter the 10-digit case number on the complaint (the first number if there is more than one), and follow the prompts. You will receive a confirmation number and an e-mail notification that the documents were successfully filed.

**Although this matter is set for trial, this does not mean that this matter cannot be resolved through a settlement agreement**. The NLRB recognizes that adjustments or settlements consistent with the policies of the National Labor Relations Act reduce government expenditures and promote amity in labor relations and encourages the parties to engage in settlement efforts.

## I.     BEFORE THE HEARING

The rules pertaining to the Board's pre-hearing procedures, including rules concerning filing an answer, requesting a postponement, filing other motions, and obtaining subpoenas to compel the attendance of witnesses and production of documents from other parties, may be found at Sections 102.20 through 102.32 of the Board's Rules and Regulations. In addition, you should be aware of the following:

- **Special Needs:** If you or any of the witnesses you wish to have testify at the hearing have special needs and require auxiliary aids to participate in the hearing, you should notify the Regional Director as soon as possible and request the necessary assistance. Assistance will be provided to persons who have handicaps falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.603.

- **Pre-hearing Conference:** One or more weeks before the hearing, the ALJ may conduct a telephonic prehearing conference with the parties. During the conference, the ALJ will explore whether the case may be settled, discuss the issues to be litigated and any logistical issues related to the hearing, and attempt to resolve or narrow outstanding issues, such as disputes relating to subpoenaed witnesses and documents. This conference is usually not recorded, but during the hearing the ALJ or the parties sometimes refer to discussions at the pre-hearing conference. You do not have to wait until the prehearing conference to meet with the other parties to discuss settling this case or any other issues.

## II.     DURING THE HEARING

The rules pertaining to the Board's hearing procedures are found at Sections 102.34 through 102.43 of the Board's Rules and Regulations. Please note in particular the following:

- **Witnesses and Evidence**: At the hearing, you will have the right to call, examine, and cross-examine witnesses and to introduce into the record documents and other evidence.

- **Exhibits:  Each exhibit offered in evidence must be provided in duplicate to the court reporter and a copy of each of each exhibit should be supplied to the ALJ and each party when the exhibit is offered in evidence.** If a copy of any exhibit is not available when the original is received, it will be the responsibility of the party offering such exhibit to submit the copy to the ALJ before the close of hearing.

(OVER)

If a copy is not submitted, and the filing has not been waived by the ALJ, any ruling receiving the exhibit may be rescinded and the exhibit rejected.

- **Transcripts**:  An official court reporter will make the only official transcript of the proceedings, and all citations in briefs and arguments must refer to the official record. The Board will not certify any transcript other than the official transcript for use in any court litigation.  Proposed corrections of the transcript should be submitted, either by way of stipulation or motion, to the ALJ for approval.  Everything said at the hearing while the hearing is in session will be recorded by the official reporter unless the ALJ specifically directs off-the-record discussion.  If any party wishes to make off-the-record statements, a request to go off the record should be directed to the ALJ.

- **Oral Argument:**  You are entitled, on request, to a reasonable period of time at the close of the hearing for oral argument, which shall be included in the transcript of the hearing.  Alternatively, the ALJ may ask for oral argument if, at the close of the hearing, if it is believed that such argument would be beneficial to the understanding of the contentions of the parties and the factual issues involved.

- **Date for Filing Post-Hearing Brief**:  Before the hearing closes, you may request to file a written brief or proposed findings and conclusions, or both, with the ALJ.  The ALJ has the discretion to grant this request and to will set a deadline for filing, up to 35 days.

## III.    AFTER THE HEARING

The Rules pertaining to filing post-hearing briefs and the procedures after the ALJ issues a decision are found at Sections 102.42 through 102.48 of the Board's Rules and Regulations.  Please note in particular the following:

- **Extension of Time for Filing Brief with the ALJ:**  If you need an extension of time to file a post-hearing brief, you must follow Section 102.42 of the Board's Rules and Regulations, which requires you to file a request with the appropriate chief or associate chief administrative law judge, depending on where the trial occurred.  You must immediately serve a copy of any request for an extension of time on all other parties and furnish proof of that service with your request.  You are encouraged to seek the agreement of the other parties and state their positions in your request.

- **ALJ's Decision:**  In due course, the ALJ will prepare and file with the Board a decision in this matter. Upon receipt of this decision, the Board will enter an order transferring the case to the Board and specifying when exceptions are due to the ALJ's decision.  The Board will serve copies of that order and the ALJ's decision on all parties.

- **Exceptions to the ALJ's Decision**:  The procedure to be followed with respect to appealing all or any part of the ALJ's decision (by filing exceptions with the Board), submitting briefs, requests for oral argument before the Board, and related matters is set forth in the Board's Rules and Regulations, particularly in Section 102.46 and following sections.  A summary of the more pertinent of these provisions will be provided to the parties with the order transferring the matter to the Board.

**UNITED STATES GOVERNMENT**
**NATIONAL LABOR RELATIONS BOARD**
**NOTICE**

Case 19-CA-324895

The issuance of the notice of formal hearing in this case does not mean that the matter cannot be disposed of by agreement of the parties. On the contrary, it is the policy of this office to encourage voluntary adjustments. The examiner or attorney assigned to the case will be pleased to receive and to act promptly upon your suggestions or comments to this end.

An agreement between the parties, approved by the Regional Director, would serve to cancel the hearing. However, unless otherwise specifically ordered, the hearing will be held at the date, hour, and place indicated. Postponements *will not be granted* unless good and sufficient grounds are shown *and* the following requirements are met:

(1) The request must be in writing. An original and two copies must be filed with the Regional Director when appropriate under 29 CFR 102.16(a) or with the Division of Judges when appropriate under 29 CFR 102.16(b).

(2) Grounds must be set forth in *detail*;

(3) Alternative dates for any rescheduled hearing must be given;

(4) The positions of all other parties must be ascertained in advance by the requesting party and set forth in the request; and

(5) Copies must be simultaneously served on all other parties (listed below), and that fact must be noted on the request.

Except under the most extreme conditions, no request for postponement will be granted during the three days immediately preceding the date of hearing.

**E-Service**

Chuck Witkowski, President
Permobil, Inc.
2701 W Court St.
Pasco, WA 99301
  chuck.witkowski@permobil.com

Sarah N. Turner, Attorney
Gordon Rees Scully & Mansukhani LLP
701 5th Ave., Ste. 2100
Seattle, WA 98104-7084
  sturner@grsm.com

Callie A Lee, Attorney
Gordon Rees Scully & Mansukhani LLP
701 5th Ave., Ste. 2100
Seattle, WA 98104-7084
  calee@grsm.com

**E-Service**

Jonathan O. Harris, Attorney
Jackson Lewis PC
611 Commerce St., Ste. 2803
Nashville, TN 37203
  jonathan.harris@jacksonlewis.com

Mark Westphal
6920 Ryder Rd.
Pasco, WA 99301
  mark.westphal@sunmed.com

## EMPLOYMENT AGREEMENT

This Employment Agreement (this "Agreement") is made and entered on $\underline{OCT\ 14}$, 2021 (the "Commencement Date"), between PERMOBIL, INC., a Tennessee corporation, and its parents, subsidiaries and affiliates (the "Company"), and Mark Westphal (the "Employee").

WHEREAS, the Employee currently serves as Director of Customer Experience of the Company;

WHEREAS, the Company desires to continue to retain the services and employment of the Employee, and the Employee desires to continue Employee's services and employment with the Company in the role of Greenfield Services Team Member upon the terms and conditions hereinafter set forth;

WHEREAS, the Company is engaged in the business of manufacturing and selling medical mobility and rehabilitative devices;

WHEREAS, the Company uses highly proprietary methods in creating its products which allow the Company a unique competitive advantage in a highly competitive industry;

WHEREAS, to be successful, Company must preserve its competitive position and goodwill in the marketplace and prevent the unauthorized disclosure of its confidential and/or proprietary information, and a failure to do so could threaten Company's business and the financial and personal interest of all Company's employees;

WHEREAS, the parties agree that without the existence of the covenants in this Agreement, the employee would gain an unfair advantage in future competition with the employer;

WHEREAS, this Agreement is intended to strike a balance between the Company's interests concerning unfair competition and confidential information and the Employee's interests with respect to Employee's employment;

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein and for good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto, each intending to be legally bound hereby, agree as follows:

1. Employment. On the terms and subject to the conditions set forth herein, the Company hereby agrees to employ the Employee, and the Employee hereby agrees to continue such employment. During the employment term, the Employee will serve as Greenfield Services Team Member and shall perform such duties and responsibilities as are customarily attendant to such position with respect to the business of the Company and such other duties and responsibilities as may from time to time be assigned to Employee. The Employee's employment with the Company shall be on an "at-will" basis, which means that the Employee's employment is terminable by either the Company or the Employee at any time for any reason or no reason, with or without cause or notice.

2. Compensation and Benefits.

(a) Base Salary. As compensation for the Employee's services hereunder and in consideration of the Employee's other agreements hereunder, during the Employment Term, the Company shall pay the Employee a base salary, payable in equal installments in accordance with Company payroll procedures, to review by the Board or the Reporting Officer from time to time. Base salary shall be $124,271.00 USD annually.

(b) Bonus.
  i. Build Phase Incentive. During the Build Phase of Project Greenfield, the Employee may be eligible to receive project incentive compensation with a

# EXHIBIT A

target of 10% of Employee's pro-rated annual base salary based on the achievement of Project Greenfield execution milestones.

ii. Launch Phase Incentive. During the Launch Phase of Project Greenfield, which is expected to commence in Q2 2023, the Employee may be eligible to receive incentive compensation with a target of 30% of the Employee's pro-rated annual base salary based on actual gross profit compared to the business plan set forth at the end of Phase 1 of the Build Phase.

iii. Timing. Project Greenfield incentive compensation shall be paid out in a lump sum minus applicable taxes within 60 days following the end of each calendar year.

(c)     Benefits. The Employee's other benefits remain unchanged.

3.     Covenants of the Employee. The Employee acknowledges that in the course of Employee's employment with the Company Employee will become familiar with the Company's trade secrets and with other confidential and proprietary information concerning the Company, and that Employee's services are of special, unique and extraordinary value to the Company. Therefore, the Company and the Employee mutually agree that it is in the interest of both parties for the Employee to enter into the restrictive covenants set forth in this Section to, among other things, protect the legitimate business interests of the Company, and that such restrictions and covenants contained in this Section are reasonable in geographical and temporal scope and in all other respects given the nature and scope of the Employee's duties and the nature and scope of the Company's business and that such restrictions and covenants do not and will not unduly impair the Employee's ability to earn a living after termination of Employee's employment with the Company. The Employee further acknowledges and agrees that (i) the Company would not have entered into this Agreement but for the restrictive covenants of the Employee set forth in this Section, and (ii) such restrictive covenants have been made by the Employee in order to induce the Company to enter into this Agreement.

A.     Non-solicitation of Customers. During the term of the Employee's employment with the Company and for the one (1)-year period following termination of such employment under any circumstances (the "Restricted Period"), Employee shall not, individually or collectively, as a participant in a partnership, sole proprietorship, corporation, limited liability company, or other entity, or as an operator, investor, shareholder, partner, director, employee, consultant, manager, sales representative, independent contractor or advisor of any such entity, or in any other capacity whatsoever, either directly or indirectly solicit, divert, take away or attempt to take away the business of the Company's present Customers and past Customers who were Customers of the Company within the twelve (12) months prior to Employee's termination.

As used in this section, "**Customer**" shall mean any person or entity with whom Employee had contact by reason of Employee's employment with Company, and that Company (a) sold products or rendered services to, or (b) solicited the business of such person or entity, whether or not any services were rendered to such person during Employee's employment.

B.     Non-Solicitation of Employees. During the Restricted Period, Employee shall not: (i) participate, directly or indirectly, in or be materially involved in any manner in the hiring or any attempt to hire as an employee, officer, director, consultant, or advisor any person who is at the time of such hiring or attempted hiring, or was within six (6) months of such hiring or attempted hiring, an employee of the Company; or (ii) otherwise, directly or indirectly, induce or attempt to induce any employee of the Company to leave the employ of the Company.

C.     Noncompetition. During the Restricted Period, Employee shall not, within the United States of America, directly or indirectly, own, manage, operate, control, advise, be employed by, or materially participate in, or be materially involved in any manner with the ownership, management, operation, or control of any business or entity that competes with the Business. For purposes of this, "**Business**" shall be defined as manufacturing, marketing and selling complex rehabilitation devices and accessories.

2

Notwithstanding the foregoing, the Employee's ownership solely as an investor of two percent (2%) or less of the outstanding securities of any class of any publicly-traded securities of any company shall not, by itself, be considered to be competition with the Company

D.    Confidential Information.

(i) The Employee acknowledges that all customer lists and information, vendor or supplier lists and information, inventions, trade secrets, know-how that is non-public, confidential or proprietary knowledge, information or data with respect to the products, services, operations, finances, business or affairs of the Company or with respect to confidential, proprietary or secret processes, methods, inventions, services, techniques, customers (including, without limitation, the specific nature of the services provided by the Company), employees (including, without limitation, the matters subject to this Agreement) or plans of or with respect to the Company or the terms of this Agreement (all of the foregoing collectively hereinafter referred to as, "Confidential Information") are property of the Company. The Employee further acknowledges that the Company intends, and makes reasonable good faith efforts, to protect the Confidential Information from public disclosure. Therefore, the Employee agrees that, except as required by law or regulation or as legally compelled by court order (provided that in such case, the Employee shall promptly notify the Company of such order, shall cooperate with the Company in attempting to obtain a protective order or to otherwise restrict such disclosure, and shall only disclose Confidential Information to the minimum extent necessary to comply with any such law, regulation or order), during the employment term and at all times thereafter, the Employee shall not, directly or indirectly, divulge, transmit, publish, copy, distribute, furnish or otherwise disclose or make accessible any Confidential Information, or use any Confidential Information for the benefit of anyone other than the Company, unless and to the extent that the Confidential Information becomes generally known to and available for use by the general public other than as a result of the Employee's acts or omissions or such disclosure is necessary in the course of the Employee's proper performance of Employee's duties under this Agreement.

(ii) The Company does not wish to incorporate any unlicensed or unauthorized material into their products or services. Therefore, the Employee agrees that Employee will not disclose to the Company, use in the Company's business, or cause the Company to use, any information or material which is a trade secret, or confidential or proprietary information, of any third party, including, but not limited to, any former employer, competitor or client, unless the Company has a right to receive and use such information or material. The Employee will not incorporate into Employee's work any material or information which is subject to the copyrights of any third party unless the Company has a written agreement with such third party or otherwise has the right to receive and use such material or information.

E.    Company Intellectual Property. The Employee agrees to promptly disclose to the Company any and all work product, inventions, works of authorship, designs, methods, processes, technology, patterns, techniques, data, Confidential Information, patents, trade secrets, trademarks, domain names, copyrights, and the like, and all other intellectual property relating to the business of the Company and any of its affiliates which are created, authored, composed, invented, discovered, performed, perfected, or learned by the Employee (either solely or jointly with others) during the employment term (collectively, together with such intellectual property as may be owned or acquired by the Company, the "Company Intellectual Property"). The Company Intellectual Property shall be the sole and absolute property of the Company and its affiliates. All work performed by the Employee in authoring, composing, inventing, creating, developing or modifying Company Intellectual Property and/or other work product to which copyright protection may attach during the course of the Employee's employment with the Company shall be considered "works made for hire" to the extent permitted under applicable copyright law and will be considered the sole property of the Company. To the extent such works, work product or Company Intellectual Property are not considered "works made for hire," all right, title, and interest to such works, work product and Company Intellectual Property, including, but not limited to, all copyrights, patents, trademarks, rights of publicity, and trade secrets, is hereby assigned to the Company and the Employee agrees, at the Company's expense, to execute any documents requested by the Company at any time in relation to such assignment. The Employee acknowledges and agrees that the Company is and will be the sole and absolute owner of all trademarks, service marks, domain names, patents, copyrights, trade dress, trade secrets, business names, rights of publicity, inventions, proprietary know-how and information of any

3

Case 2:23-cv-00686 Document 61-1   Filed 06/09/23   Page 14 of 19 PageID #:3654

type, whether or not in writing, and all other intellectual property used by the Company or held for use in the business of the Company, including all Company Intellectual Property. The Employee further acknowledges and agrees that any and all derivative works, developments, or improvements based on intellectual property, materials and assets subject to this Section created during the employment term (including, without limitation, Company Intellectual Property) shall be exclusively owned by the Company. The Employee will cooperate with the Company and any of its affiliates, at no additional cost to such parties (whether during or after the employment term), in the confirmation, registration, protection and enforcement of the rights and property of the Company and its affiliates in such intellectual property, materials and assets, including, without limitation, the Company Intellectual Property.

        F.      <u>Non-disparagement</u>. During the employment term and thereafter, the parties agree that they shall not, directly or indirectly, take any action, or encourage others to take any action, to disparage or criticize each other and, in the case of the Company or its respective employees, officers, directors, products, services, customers or owners. Nothing contained in this Section shall preclude the Employee from enforcing Employee's rights under this Agreement or truthfully testifying in response to legal process or a governmental inquiry.

        G.      <u>Company Property</u>. All Confidential Information, Company Intellectual Property, files, records, correspondence, memoranda, notes or other documents (including, without limitation, those in computer-readable form) or property relating or belonging to the Company whether prepared by the Employee or otherwise coming into Employee's possession or control in the course of the performance of Employee's services under this Agreement, shall be the exclusive property of the Company and shall be delivered to the Company, and not retained by the Employee (including, without limitation, any copies thereof), promptly upon request by the Company and, in any event, promptly upon termination of the employment term. The Employee acknowledges and agrees that Employee has no expectation of privacy with respect to the Company's telecommunications, networking or information processing systems (including, without limitation, stored computer files, email messages and voice messages), and that the Employee's activity and any files or messages on or using any of those systems may be monitored at any time without notice.

        H.      <u>Enforcement</u>. The Employee acknowledges that a breach of Employee's covenants and agreements contained in this Section would cause irreparable damage to the Company, the exact amount of which would be difficult to ascertain, and that the remedies at law for any such breach or threatened breach would be inadequate. Accordingly, the Employee agrees that if Employee breaches or threatens to breach any of the covenants or agreements contained in this Section, in addition to any other remedy which may be available at law or in equity, the Company shall be entitled to: (i) institute and prosecute proceedings for specific performance and injunctive and other equitable relief to prevent the breach or any threatened breach thereof and (ii) an equitable accounting of all profits or benefits arising out of such violation.

        I.      <u>Scope of Covenants</u>. The Company and the Employee further acknowledge that the time, scope, geographic area and other provisions of this Section have been specifically negotiated by sophisticated commercial parties and agree that they consider the restrictions and covenants contained in this Section to be reasonable and necessary for the protection of the interests of the Company, but if any such restriction or covenant shall be held by any court of competent jurisdiction to be void but would be valid if deleted in part or reduced in application, such restriction or covenant shall apply in such jurisdiction with such deletion or modification as may be necessary to make it valid and enforceable. The restrictions and covenants contained in each paragraph of this Section shall be construed as separate and individual restrictions and covenants and shall each be capable of being reduced in application or severed without prejudice to the other restrictions and covenants or to the remaining provisions of this Agreement.

        J.      <u>Disclosure of Restrictive Covenants</u>. The Employee agrees to disclose in advance the existence and terms of the restrictions and covenants contained in this Section to any employer during the Restricted Period.

4

Case 2:23-cv-00686 Document 61-1 Filed 06/09/23 Page 15 of 19 PageID #:3655

K.      Extension of Restricted Period. If the Employee breaches this Section in any respect, the restrictions contained in this Section will be extended for a period equal to the period that the Employee was in breach.

4.      Termination. The Company or the Employee may terminate the Employee's employment at any time and for any reason or no reason at all. However, the Company requests that the Employee provide thirty (30) days' written notice of the Employee's intent to resign. Upon termination, the Employee shall be paid (i) the Employee's Base Salary through the date of termination, and (ii) any other amounts due the Employee as of the date of termination, in each case to the extent not previously paid.

5.      Notices. All notices, requests, demands, claims, consents and other communications which are required, permitted or otherwise delivered hereunder shall in every case be in writing and shall be deemed properly served if: (a) delivered personally, (b) sent by registered or certified mail, in all such cases with first class postage prepaid, return receipt requested, or (c) delivered by a recognized overnight courier service, to the parties at the addresses as set forth below:

| If to the Company: | Permobil, Inc. |
| | General Counsel |
| | 300 Duke Dr. |
| | Lebanon, Tennessee 37090 |
| | legal@permobil.com |
| | |
| If to the Employee: | At the Employee's residence address as maintained by the Company in the regular course of its business for payroll purposes. |

With copies (which shall not
constitute notice) to:

or to such other address as shall be furnished in writing by either party to the other party; provided that such notice or change in address shall be effective only when actually received by the other party. Date of service of any such notices or other communications shall be: (a) the date such notice is personally delivered, (b) three days after the date of mailing if sent by certified or registered mail, or (c) one business day after date of delivery to the overnight courier if sent by overnight courier.

6.      General.

A.      Construction and Severability. Whenever possible, each provision of this Agreement shall be construed and interpreted in such manner as to be effective and valid under applicable law. If any provision of this Agreement is held to be prohibited by, or invalid, illegal or unenforceable it shall not affect any other provision of this Agreement.

B.      Successors and Assigns. This Agreement shall bind and inure to the benefit of and be enforceable by the Company and its successors and assigns and the Employee and the Employee's heirs, executors, administrators, and successors; provided that the services provided by the Employee under this Agreement are of a personal nature, and rights and obligations of the Employee under this Agreement shall not be assignable or delegable, except for any death payments otherwise due the Employee, which shall be payable to the estate of the Employee; provided further the Company may assign this Agreement to, and all rights hereunder shall inure to the benefit of, any parent, subsidiary or affiliate of the Company or any person, firm or corporation resulting from the reorganization of the Company or succeeding to the business or assets of the Company by purchase, merger, consolidation or otherwise.

C.      Employee's Representations. The Employee hereby represents and warrants to the Company that: (i) the execution, delivery and performance of this Agreement by the Employee do not breach, violate or cause a default under any contract, agreement, instrument, order, judgment or decree to which the Employee is bound; (ii) the Employee is not bound by any employment agreement, non-competition or non-solicitation agreement or confidentiality agreement with any other person or entity

5

Revised 5/2021

besides the Company and (iii) upon the execution of this Agreement by the Company, this Agreement shall be the valid and binding obligation of the Employee. **THE EMPLOYEE HEREBY ACKNOWLEDGES AND REPRESENTS THAT THE EMPLOYEE HAS HAD THE OPPORTUNITY TO CONSULT WITH INDEPENDENT LEGAL COUNSEL REGARDING THIS AGREEMENT, AND THE EMPLOYEE FULLY UNDERSTANDS THE TERMS AND CONDITIONS CONTAINED HEREIN.**

        D.     <u>Costs and Expenses</u>. If either Party shall commence a proceeding against the other to enforce and/or recover damages for breach of this Agreement, including Section 3, the prevailing Party in such proceeding shall be entitled to recover from the other Party all reasonable costs and expenses of enforcement and collection of any and all remedies and damages, or all reasonable costs and expenses of defense, as the case may be. The foregoing costs and expenses shall include reasonable attorneys' fees.

        E.     <u>Jurisdiction; Venue; Governing Law</u>. This Agreement and the legal relations thus created between the parties hereto shall be governed by, and construed in accordance with, the laws of Tennessee, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the law of any other jurisdiction. Each of the parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal court sitting in the Middle District of Tennessee or any state court in Wilson County, Tennessee over any suit, action, dispute or proceeding arising out of or relating to this Agreement and each of the parties agrees that any action relating in any way to this Agreement must be commenced only in the courts of the State of Tennessee, federal or state. Each of the parties hereto hereby irrevocably waive, to the fullest extent permitted or not prohibited by law, any objection which it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in such a court and any claim that any such suit, action or proceeding brought in such a court has been brought in an inconvenient forum. Each of the parties hereto hereby irrevocably consent to the service of process in any suit, action or proceeding by sending the same by certified mail, return receipt requested, or by recognized overnight courier service, to the address of such party set forth in Section 5.

        F.     <u>Compliance with Rules and Policies</u>. The Employee shall perform all services in accordance with the policies, procedures and rules established by the Company. In addition, the Employee shall comply with all laws, rules and regulations that are generally applicable to the Company and its respective employees, directors and officers.

        G.     <u>No Third-Party Beneficiaries</u>. Nothing in this Agreement, express or implied, is intended or shall be construed to give any person other than the parties to this Agreement and their respective heirs, executors, administrators, successors or permitted assigns any legal or equitable right, remedy or claim under or in respect of any agreement or any provision contained herein.

        H.     <u>No Strict Construction</u>. The parties hereto have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring either party hereto by virtue of the authorship of any of the provisions of this Agreement.

        I.     <u>Section References</u>. Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose. The words Section and paragraph herein shall refer to provisions of this Agreement unless expressly indicated otherwise.

        J.     <u>Entire Agreement</u>. This Agreement, along with any and all Confidentiality, Invention Assignment, Non-Disclosure, or Work Product Agreements Employee previously signed, constitutes the entire agreement and understanding between the parties and terminates and supersedes any and all prior agreements, understandings and representations, whether written or oral, between the parties or their affiliates.

6

K.      Survival. The covenants set forth in Section 3 of this Agreement and the provisions set forth in Sections 5 and 6 of this Agreement shall survive and shall continue to be binding upon the Employee notwithstanding the termination of this Agreement for any reason whatsoever.

L.      Amendment and Waiver. The provisions of this Agreement may be amended or waived only in writing, signed by both parties.

M.      Counterparts. This Agreement may be executed in two or more counterparts, all of which taken together shall constitute one instrument.

[Remainder of Page Intentionally Left Blank; Signature Page Follows.]

Case 3:23-cv-00586 Document 61-1  Filed 06/09/23  Page 18 of 19 PageID #:3858

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have hereunto executed this Agreement as of the day and year first written above.

MARK WESTPHAL

Date: 10/14/21

PERMOBIL AMERICAS

By:_____

Name:_____

Title:_____

Date:_____

Revised 5/2021