IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| PERMOBIL, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | Case No. 3:23-cv-586 |
| v. | ) | |
| | ) | Judge Campbell |
| MARK WESTPHAL, | ) | Magistrate Judge Holmes |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | JURY DEMANDED |

**DEFENDANT/COUNTER-PLAINTIFF'S ANSWER AND COUNTERCLAIMS**

Defendant/Counter-Plaintiff Mark Westphal ("Westphal") submits this Answer and Counterclaims:

**ANSWER**

1. Westphal admits Paragraph 1 of the Complaint.

2. Westphal admits Paragraph 2 of the Complaint.

3. Westphal admits Paragraph 3 of the Complaint.

4. Westphal denies Paragraph 4 of the Complaint.

5. Westphal denies Paragraph 5 of the Complaint, as stated.

6. Westphal admits that Permobil's Complaint purports to seek such relief and damages, but Westphal denies the validity of those claims, denies that preliminary and permanent injunctive relief is appropriate, and therefore denies Paragraph 6 of the Complaint.

7. Westphal admits that Permobil's Complaint purports to seek to enjoin Westphal, as alleged in subparts (a) through (d), but Westphal denies the validity of those claims, and therefore denies Paragraph 7 of the Complaint.

1

8. Westphal denies that Permobil was forced to seek, or is entitled to, any such relief as alleged therein and therefore denies Paragraph 8 of the Complaint.

9. Westphal denies Paragraph 9 of the Complaint.

10. Westphal denies Paragraph 10 of the Complaint.

11. Westphal denies Paragraph 11 of the Complaint.

12. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 12 of the Complaint and therefore denies the same.

13. Westphal admits Paragraph 13 of the Complaint.

14. Westphal admits Paragraph 14 of the Complaint.

15. Westphal admits that when Permobil acquired TiLite in or around 2014, he became an employee of Permobil. Westphal is without knowledge or information sufficient to form a belief as to the remaining averments of Paragraph 15 of the Complaint and therefore denies the same.

16. Westphal admits that he was in a customer-facing sales role when Permobil initially acquired TiLite. Westphal is without knowledge or information sufficient to form a belief as to the remaining averments of Paragraph 16 of the Complaint and therefore denies the same.

17. Westphal admits Paragraph 17 of the Complaint.

18. Westphal admits Paragraph 18 of the Complaint, except Westphal denies that he was a supervisor at times relevant to this lawsuit, to the extent such allegation is alleged herein.

19. Westphal admits Paragraph 19 of the Complaint, except Westphal denies that he performs the exact responsibilities, among others, in his current employment with Sunrise Medical, LLC.

20. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 20 of the Complaint and therefore denies the same.

2

21. Westphal admits Paragraph 21 of the Complaint.

22. Westphal admits Paragraph 22 of the Complaint.

23. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 23 of the Complaint and therefore denies the same.

24. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 24 of the Complaint and therefore denies the same.

25. Permobil admits Paragraph 25 of the Complaint, except Westphal denies the "highly" confidential nature of Project Greenfield and further denies that he was a supervisor to the extent such allegation is alleged herein.

26. Westphal admits Paragraph 26 of the Complaint, except Westphal denies the "highly" confidential nature of Project Greenfield.

27. Upon information and belief, Project Greenfield has not yet been brought to market by Permobil. Accordingly, Westphal is without knowledge or information sufficient to form a belief as to Paragraph 27 of the Complaint and therefore denies the same.

28. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 28 of the Complaint and therefore denies the same.

29. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 29 of the Complaint and therefore denies the same.

30. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 30 of the Complaint and therefore denies the same.

31. Westphal denies Paragraph 31 of the Complaint, as stated.

32.     Westphal admits that on or around October 14, 2021, Westphal signed the Employment Agreement attached to the Complaint as Exhibit A; Permobil, however, did not. Per the plain language of the agreement that Permobil drafted, it thus has no effect on Westphal.

33.     Westphal admits that Paragraph 33 of the Complaint contains a partial quotation of the Employment Agreement paragraph referenced therein. Westphal specifically denies that the agreement has any effect upon him, due to Permobil's failure to execute the agreement.

34.     Westphal admits that Paragraph 34 of the Complaint contains a partial quotation of the Employment Agreement paragraph referenced therein. Westphal specially denies that the agreement is reasonable in geographic or temporal scope, denies that the agreement is enforceable, and denies the restrictive covenants are enforceable.

35.     Westphal denies Paragraph 35 of the Complaint including subparts (a) through (d), as stated, except Westphal admits that the Employment Agreement purports to contain certain restrictive covenants which addressed, among other things, the paraphrased topics alleged herein. Westphal specially denies that the restrictive covenants are enforceable.

36.     Westphal denies Paragraph 36 of the Complaint, as stated, except Westphal admits that the Employment Agreement contains certain non-disparagement language that pertained to both Westphal and Permobil, as alleged in-part herein. Westphal specifically denies that the agreement has any effect upon him, due to Permobil's failure to execute the agreement.

37.     Westphal denies Paragraph 37 of the Complaint, as stated, except Westphal admits that the Employment Agreement contains certain or similar language as referenced herein. Westphal further denies that he violated or breached the covenants or agreements alleged in Paragraph 37 of the Complaint. Westphal specifically denies that the restrictive covenants are

4

enforceable. Westphal further denies that the agreement has any effect upon him, due to Permobil's failure to execute the agreement.

38.     Westphal denies Paragraph 38 of the Complaint.

39.     Westphal denies Paragraph 39 of the Complaint, as stated, except Westphal admits that the Employment Agreement illegally contains certain or similar language as referenced herein. Westphal specifically denies that the agreement has any effect upon him, due to Permobil's failure to execute the agreement.

40.     Westphal denies Paragraph 40 of the Complaint, as stated, except Westphal admits that the Employment Agreement contains certain or similar language as referenced herein. Since Permobil did not sign the agreement, per the plain language of the agreement that Permobil drafted, it has no effect on Westphal.

41.     Westphal admits that he signed the NDA. Westphal denies that Permobil signed the NDA.

42.     Westphal denies Paragraph 42 of the Complaint, as stated, except Westphal admits that the Confidentiality and NDA contains certain or similar language as referenced herein.

43.     Westphal denies Paragraph 43 of the Complaint, as stated, except Westphal admits that the NDA contains certain or similar language as referenced herein.

44.     Westphal denies Paragraph 44 of the Complaint, as stated, except admits that the NDA contains certain or similar language as referenced herein.

45.     Westphal denies Paragraph 45 of the Complaint, as stated, except Westphal admits that the NDA contains certain or similar language as referenced herein.

46. Westphal denies Paragraph 46 of the Complaint, as stated, except Westphal admits that the NDA contains certain or similar language in a paragraph different than that cited by Permobil in Paragraph 46 of the Complaint.

47. Westphal denies Paragraph 47 of the Complaint.

48. Westphal denies Paragraph 48 of the Complaint, as stated.

49. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 49 of the Complaint and therefore denies the same.

50. Westphal denies Paragraph 50 of the Complaint.

51. Westphal denies Paragraph 51 of the Complaint, as stated.

52. Westphal denies Paragraph 52 of the Complaint, as stated.

53. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 53 of the Complaint and therefore denies the same.

54. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 54 of the Complaint and therefore denies the same.

55. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 55 of the Complaint and therefore denies the same.

56. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 56 of the Complaint and therefore denies the same.

57. Westphal admits Permobil has or had a facility other than its facility in Lebanon, Tennessee, where work on Project Greenfield was performed by certain individuals. Westphal is without knowledge or information sufficient to form a belief as to the remaining averments of Paragraph 57 of the Complaint and therefore denies the same.

58.     Westphal is without knowledge or information sufficient to form a belief as to Paragraph 58 of the Complaint and therefore denies the same.

59.     Upon information and belief, Project Greenfield has not yet been brought to market. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 59 of the Complaint and therefore denies the same.

60.     Westphal is without knowledge or information sufficient to form a belief as to Paragraph 60 of the Complaint and therefore denies the same.

61.     Westphal denies Paragraph 61 of the Complaint.

62.     Westphal is without knowledge or information sufficient to form a belief as to Paragraph 62 of the Complaint and therefore denies the same.

63.     Westphal denies Paragraph 63 of the Complaint, as stated.

64.     Westphal admits Paragraph 64 of the Complaint, except Westphal denies that his departure from Permobil was "sudden and unexpected" as alleged herein.

65.     Westphal denies Paragraph 65 of the Complaint, as stated, except admits that he did not tell coworkers that he was going to work at Sunrise.

66.     Westphal denies Paragraph 66 of the Complaint, as stated, except admits that on or about April 26, 2023, Permobil claimed to have just "discovered" his Employment Agreement, despite its recent representation that it had no such agreement on file.

67.     Westphal denies Paragraph 67 of the Complaint, as stated.

68.     Westphal denies Paragraph 68 of the Complaint, as stated.

69.     Westphal denies Paragraph 69 of the Complaint, as stated.

70.     Westphal denies Paragraph 70 of the Complaint, as stated.

7

71.     Westphal denies Paragraph 71 of the Complaint, except Westphal admits that he has traveled to Sunrise Medical, LLC's facility in Tennessee once since becoming employed by Sunrise Medical, LLC.

72.     Westphal denies Paragraph 72 of the Complaint.

73.     Westphal denies Paragraph 73 of the Complaint, as stated.

74.     Westphal denies Paragraph 74 of the Complaint, as stated. Westphal further denies that he has disclosed any confidential information with respect to Project Greenfield.

75.     Westphal denies Paragraph 75 of the Complaint, as stated.

76.     Westphal denies Paragraph 76 of the Complaint. Westphal further denies that he has disclosed any confidential information with respect to Project Greenfield.

77.     Upon information and belief, Project Greenfield has not yet been brought to market. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 77 of the Complaint and therefore denies the same. Westphal further denies that he has disclosed any confidential information with respect to Project Greenfield.

78.     Westphal denies Paragraph 78 of the Complaint. Westphal further denies that he has disclosed any confidential information with respect to Project Greenfield.

79.     Westphal denies Paragraph 79 of the Complaint.

80.     Westphal admits Paragraph 80 of the Complaint, except Westphal denies that he has breached the Employment Agreement and the NDA.

81.     Westphal denies Paragraph 81 of the Complaint, as stated.

82.     Westphal admits Paragraph 82 of the Complaint.

83.     Westphal denies Paragraph 83 of the Complaint, as stated.

84.     Westphal denies Paragraph 84 of the Complaint.

85.     Westphal denies that Permobil is entitled to any of the relief sought in Paragraph 85 of the Complaint including subparts (a) through (d), or anywhere else in the Complaint, and therefore denies Paragraph 85 of the Complaint.

86.     Westphal incorporates by reference his responses to Paragraphs 1 through 85 of the Complaint, as if set forth fully herein.

87.     Westphal denies Paragraph 87 of the Complaint.

88.     Westphal denies Paragraph 88 of the Complaint.

89.     Westphal denies Paragraph 89 of the Complaint, as stated, except Westphal admits that the Employment Agreement contains certain or similar language as referenced herein. Westphal specifically denies that the agreement has any effect upon him, due to Permobil's failure to execute the agreement.

90.     Westphal denies Paragraph 90 of the Complaint. Westphal further denies that he has disclosed any confidential information with respect to Project Greenfield.

91.     Westphal denies Paragraph 91 of the Complaint, as stated, except Westphal admits that the Employment Agreement contains certain or similar language as referenced herein. Westphal denies that the Agreement is enforceable.  Furthermore, since Permobil never signed the Agreement, Westphal denies that the parties even entered into this Agreement.

92.     Westphal denies Paragraph 92 of the Complaint.

93.     Westphal denies Paragraph 93 of the Complaint, as stated, except Westphal admits that the Employment Agreement contains certain or similar language as referenced herein. Furthermore, since Permobil never signed the Agreement, Westphal denies that agreement has any effect on him.

94.     Westphal denies Paragraph 94 of the Complaint.

9

95.     Westphal denies Paragraph 95 of the Complaint, as stated, except Westphal admits that the Employment Agreement contains certain or similar language as referenced herein. Furthermore, since Permobil never signed the Agreement, Westphal denies that the parties even entered into this Agreement.

96.     Westphal denies Paragraph 96 of the Complaint.

97.     Westphal denies Paragraph 97 of the Complaint.

98.     Westphal denies Paragraph 98 of the Complaint.

99.     Westphal denies Permobil is entitled to any of the relief sought in Paragraph 99 of the Complaint including subparts (a) through (d), or anywhere else in the Complaint, and therefore denies Paragraph 99 of the Complaint.

100.     Westphal denies Permobil is entitled to any of the relief sought in Paragraph 100 of the Complaint, or anywhere else in the Complaint, and therefore denies Paragraph 100 of the Complaint.

101.     Westphal denies Paragraph 101 of the Complaint.

102.     Westphal incorporates by reference his responses to Paragraphs 1 through 101 of the Complaint, as if set forth fully herein.

103.     Westphal denies Paragraph 103 of the Complaint.

104.     Westphal denies Paragraph 104 of the Complaint, as stated.

105.     Westphal denies Paragraph 105 of the Complaint, as stated, except Westphal admits that the NDA contains certain or similar language as referenced herein.

106.     Westphal denies Paragraph 106 of the Complaint. Westphal further denies that he has disclosed any confidential information with respect to Project Greenfield.

107.     Westphal denies Paragraph 107 of the Complaint.

10

108.     Westphal denies Paragraph 108 of the Complaint.

109.     Westphal denies Permobil is entitled to any of the relief sought in Paragraph 109 of the Complaint, or anywhere else in the Complaint, and therefore denies Paragraph 109 of the Complaint.

110.     Westphal denies Permobil is entitled to any of the relief sought in Paragraph 110 of the Complaint, or anywhere else in the Complaint, and therefore denies Paragraph 110 of the Complaint.

111.     Westphal denies Paragraph 111 of the Complaint.

112.     Westphal incorporates by reference his responses to Paragraphs 1 through 111 of the Complaint, as if set forth fully herein.

113.     Paragraph 113 of the Complaint is a purely legal recitation that does not require a response. To the extent a response is required, Westphal denies Paragraph 113 of the Complaint, as stated.

114.     Westphal is without knowledge or information sufficient to form a belief as to Paragraph 114 of the Complaint and therefore denies the same.

115.     Westphal is without knowledge or information sufficient to form a belief as to Paragraph 115 of the Complaint and therefore denies the same.

116.     Westphal is without knowledge or information sufficient to form a belief as to Paragraph 116 of the Complaint and therefore denies the same.

117.     Upon information and belief, Project Greenfield has not yet been brought to market. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 117 of the Complaint and therefore denies the same.

118.     Westphal is without knowledge or information sufficient to form a belief as to Paragraph 118 of the Complaint and therefore denies the same.

119.     Westphal is without knowledge or information sufficient to form a belief as to Paragraph 119 of the Complaint and therefore denies the same.

120.     Paragraph 120 of the Complaint is a purely legal recitation that does not require a response. To the extent a response is required, Westphal denies Paragraph 120 of the Complaint, as stated.

121.     Westphal is without knowledge or information sufficient to form a belief as to Paragraph 121 of the Complaint and therefore denies the same.  Westphal specifically denies that he was a supervisor on Project Greenfield.

122.     Westphal denies Paragraph 122 of the Complaint. Westphal further denies that he has disclosed any trade secrets with respect to Project Greenfield.

123.     Westphal denies Paragraph 123 of the Complaint. Westphal further denies that he has disclosed any trade secrets with respect to Project Greenfield.

124.     Upon information and belief, Project Greenfield has not yet been brought to market. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 124 of the Complaint and therefore denies the same. Westphal further denies that he has disclosed any trade secrets with respect to Project Greenfield.

125.     Westphal is without knowledge or information sufficient to form a belief as to Paragraph 125 of the Complaint and therefore denies the same.

126.     Westphal denies Paragraph 126 of the Complaint. Westphal further denies that he has disclosed any trade secrets with respect to Project Greenfield. Westphal further denies that he has violated the TUTSA.

127.     Westphal denies Paragraph 127 of the Complaint.

128.     Westphal denies Permobil is entitled to any of the relief sought in Paragraph 128 of the Complaint, or anywhere else in the Complaint, and therefore denies Paragraph 128 of the Complaint.

129.     Westphal denies Permobil is entitled to any of the relief sought in Paragraph 129 of the Complaint, or anywhere else in the Complaint, and therefore denies Paragraph 129 of the Complaint. Westphal further denies that he has violated the TUTSA.

130.     Westphal denies Paragraph 130 of the Complaint. Westphal further denies that he has disclosed any trade secrets with respect to Project Greenfield.

131.     Westphal denies Paragraph 131 of the Complaint. Westphal further denies that he has disclosed any trade secrets with respect to Project Greenfield.

132.     Westphal incorporates by reference his responses to Paragraphs 1 through 131 of the Complaint, as if set forth fully herein.

133.     Paragraph 133 of the Complaint is a purely legal recitation that does not require a response. To the extent a response is required, Westphal denies Paragraph 133 of the Complaint, as stated.

134.     Westphal is without knowledge or information sufficient to form a belief as to Paragraph 134 of the Complaint and therefore denies the same. Westphal specifically denies that he was a supervisor on Project Greenfield.

135.     Westphal denies Paragraph 135 of the Complaint. Westphal further denies that he has disclosed any trade secrets with respect to Project Greenfield.

136.     Westphal denies Paragraph 136 of the Complaint. Westphal further denies that he has disclosed any trade secrets with respect to Project Greenfield.

137.     Upon information and belief, Project Greenfield has not yet been brought to market. Westphal is without knowledge or information sufficient to form a belief as to Paragraph 137 of the Complaint and therefore denies the same. Westphal further denies that he has disclosed any trade secrets with respect to Project Greenfield.

138.     Westphal is without knowledge or information sufficient to form a belief as to Paragraph 138 of the Complaint and therefore denies the same.

139.     Westphal denies Paragraph 139 of the Complaint. Westphal further denies that he has disclosed any trade secrets with respect to Project Greenfield. Westphal further denies that he has violated the DTSA.

140.     Westphal denies Paragraph 140 of the Complaint.

141.     Westphal denies Permobil is entitled to any of the relief sought in Paragraph 141 of the Complaint, or anywhere else in the Complaint, and therefore denies Paragraph 141 of the Complaint.

142.     Westphal denies Permobil is entitled to any of the relief sought in Paragraph 142 of the Complaint, or anywhere else in the Complaint, and therefore denies Paragraph 142 of the Complaint. Westphal further denies that he has violated the DTSA.

143.     Westphal denies Paragraph 143 of the Complaint. Westphal further denies that he has disclosed any trade secrets with respect to Project Greenfield.

144.     Westphal denies Paragraph 144 of the Complaint. Westphal further denies that he has disclosed any trade secrets with respect to Project Greenfield.

145.     Westphal denies that Permobil is entitled to any of the relief sought in the Prayer for Relief section of the Complaint including subparts (A) through (F) or stated anywhere else in the Complaint, and therefore denies this section in its entirety.

146. Any allegation that is not specifically admitted herein is denied.

## AFFIRMATIVE AND OTHER DEFENSES

1. Plaintiff's Complaint fails to state a claim upon which relief may be granted.

2. Defendant denies that Plaintiff is entitled to any damages in this case. Nonetheless, to the extent Plaintiff may be entitled to damages, those damages must be reduced to the extent Plaintiff has failed to mitigate some or all of Plaintiff's damages.

3. Excessive punitive damages violate due process.

4. Plaintiff's damages claims are limited by applicable caps on damages.

5. Plaintiff's claims may be barred by the relevant statute of limitations.

6. Plaintiff's claims are barred by unclean hands.

7. Defendant asserts all defenses constituting an avoidance or affirmative defense, including, but not limited to, laches, waiver, and res judicata. Defendant asserts all relevant statutory and/or common law defenses as may be applicable to the facts asserted and proved in this litigation.

8. The Employment Agreement which is the subject of Plaintiff's breach of contract claim is an unenforceable contract.

9. Permobil never executed the Employment Agreement. Thus, by the agreement's own terms, it is of no effect on Westphal.

10. The Employment Agreement is overly broad in geographic and/or temporal scope, and broader than necessary to protect a protectable interest, and thus unenforceable.

11. The Employment Agreement does not protect a protectable interest as it relates to Westphal.

12. The Employment Agreement is not supported by adequate consideration.

15

13.     The non-compete agreement, among other restrictive covenants, set forth in the Employment Agreement, is void and unenforceable under the Washington Non-Compete Act ("WNA" or the "Act").

14.     Westphal's signature on the Employment Agreement was procured by fraud, an intentional misrepresentation and/or a negligent misrepresentation.

15.     The Employment Agreement that is the subject of Plaintiff's lawsuit is unconscionable.

16.     Defendant reserves the right to assert additional defenses, as they become evident through discovery or investigation.

## JURY DEMANDED

Westphal demands a jury on all issues so triable.

WHEREFORE, Defendant respectfully requests that after due hearing, judgment be entered in favor of Defendant, that Defendant be awarded his fees and costs in defending this matter, that all costs be taxed to Plaintiff in this matter, and that the Court award all other further relief to which Defendant may be entitled.

16

<u>**WESTPHAL'S COUNTERCLAIMS**</u>

Westphal respectfully submits the following Counterclaims against Permobil. In support of these counterclaims, Westphal states as follows:

**PARTIES**

1.      Westphal is a domiciliary of the State of Washington and resides at 6920 Ryder Road, Pasco, WA 99301.

2.      Westphal is a former employee of Permobil, Inc., a Tennessee corporation whose principal place of business is located at 300 Duke Drive, Lebanon, Tennessee 37090. Permobil has a facility in the State of Washington located at 2701 W Court Street, Pasco, WA 99301.

**JURISDICTION AND VENUE**

3.      This Court has held that the Middle District of Tennessee is the appropriate jurisdiction and venue for this action. (*See* Docket No(s). 62 and 63).

**FACTUAL ALLEGATIONS**

A.      **Background.**

4.      Westphal became employed by Permobil in or about 2014, when Permobil acquired TiLite, the company where Westphal previously worked.

5.      Permobil develops, manufactures, and markets wheelchairs, seating and positioning devices, and other wheelchair accessories for people with disabilities.

6.      During his employment at Permobil, Westphal principally worked from his home in the State of Washington.

B.      **Permobil Demands that Westphal Sign an Employment Agreement that Incorporates a Non-Compete Restrictive Covenant with an Out-of-State Forum Selection Clause, a *Per Se* Violation of the Washington Non-Compete Act.**

7.      On October 4, 2021, Permobil offered Westphal a position as "Greenfield Services

Workstream Lead" on a project called "Project Greenfield."

8.    The offer letter dated October 4, 2021 (hereinafter the "Offer Letter") provided that Westphal would be paid a base salary of $124,271. (*See* Offer Letter, Doc. No. 14-1).

9.    The Offer Letter stipulated "[f]ollowing execution of this offer, we will proceed with a formal employment agreement."

10.    Westphal accepted the Offer Letter on October 5, 2021, and returned the signed copy to Permobil's Human Resources Manager, Heidi Wilkinson.

11.    On October 14, 2021, Westphal was asked by Ms. Wilkinson to sign an Employment Agreement which incorporated a non-compete restrictive covenant (hereinafter referred to as the "2021 Employment Agreement"). This request by Ms. Wilkinson on behalf of Permobil occurred after Westphal had already accepted his new position on October 5, 2021, via the Offer Letter.

12.    On October 14, 2021, Westphal asked Ms. Wilkinson whether or not Washington law would apply to the Employment Agreement.  Ms. Wilkinson represented to Westphal that the laws of the state where he resides would apply to the Employment Agreement.

13.    Westphal took contemporaneous notes of this conversation, which have been produced to Permobil during the course of discovery.

14.    Based on this representation by an agent of Permobil, Westphal executed the Employment Agreement.

15.    Requiring a Washington-based employee to submit to a non-compete restrictive covenant that incorporates an out-of-state forum selection clause was a violation of Washington law, specifically the Washington Non-Compete Act ("WNA"), RCW §§ 49.62.050 and 49.62.080.

C.    **Permobil's Fraudulent Attempts to Rectify its Past Violations of State Law.**

16.     Permobil had full knowledge of the WNA and its prohibitions by, at the very latest, April 4, 2023, when Lori Cox, another Human Resources Manager at Permobil, sent all members of Project Greenfield a document entitled "2023 NGTL Non-Compete Employment Agreement" (hereinafter referred to as the "2023 Employment Agreement"). (*See* Doc. No. 14-2).

17.     Ms. Cox apprised all team members included in her April 4, 2023, email that Permobil would require all NGTL team members to sign non-compete agreements.

18.     Ms. Cox further told these employees "these agreements are also designed to benefit you."   Thus, rather than apprise employees (including Westphal) that Permobil was attempting to remedy certain past restrictive covenants that were violative of various state laws, Permobil – through its agent Ms. Cox – attempted to sell employees on the notion that the 2023 Employment Agreement was somehow a "benefit" to them.

19.     The 2023 Employment Agreement contained a state-specific appendix, which attempted to account for some portions of Washington State law.

20.     Specifically, the Washington portion of the state-specific appendix provided that the agreement will not be enforceable against an employee making less than $116,593.18 – i.e., an effort to comply with the WNA's minimum salary requirement.

21.     Section 5.E of the 2023 Employment Agreement provided "[t]his Agreement shall be construed and enforced according to the laws of the State of Tennessee. Each of the parties hereto hereby irrevocably submit to the exclusive jurisdiction of any federal court sitting in the Middle District of Tennessee or any state court in Wilson County, Tennessee over any suit, action, dispute or proceeding arising out of or relating to this Agreement."

22.     As of April 4, 2023, Permobil, having full knowledge of the WNA's requirements, attempted to remedy its previous violations of the law with respect to at least Westphal's

previously executed restrictive covenant by attempting to require Westphal, along with all other members of Project Greenfield, to execute the 2023 Employment Agreement.

23. Westphal replied to Ms. Cox's email by asking, "I am confused as to why there is a new employment agreement being sent out. I signed one when I joined the team in November 2021. Can you let me know?"

24. Ms. Cox replied by representing that, "[a]n *audit* was done and there was not a copy of a signed agreement in your file. This is possibly a new version as it was given to me by Legal in March." (emphasis added).

25. Ms. Cox's representation to Westphal about the 2023 Employment Agreement being presented to him because a supposed "audit" revealed that he had not previously executed an agreement containing a non-compete restrictive covenant was, at best, pretext, and, at worst, an intentional misrepresentation. Indeed, this statement was contrary to the fact that all members of Project Greenfield were asked to sign the 2023 Employment Agreement, not just Westphal.

26. Westphal did not execute the 2023 Employment Agreement.

**D.     Westphal Resigns, and Permobil Claims to Have Discovered His Past Restrictive Covenant.**

27. On April 14, 2023, Westphal resigned from Permobil. Westphal accepted a sales position at Sunrise Medical, LLC ("Sunrise"). His work on Project Greenfield had not been in sales.

28. Prior to accepting his position at Sunrise, Westphal read the relevant provisions of the WNA. It was his understanding that his 2021 Employment Agreement was void and unenforceable.

29. Westphal was also relying on the representation by Ms. Wilkinson on behalf of Permobil, who informed Westphal that the laws of the state where he resides would govern the

Employment Agreement.

30.    All the while, Permobil, through its agent Ms. Cox, represented to Westphal that an "audit" revealed that Westphal had not previously signed a non-compete restrictive covenant, which further provided Westphal with the belief that he was not bound by any restrictions prior to accepting his new position at Sunrise.

31.    Prior to the end of his employment with Permobil, Westphal communicated with the Washington State Attorney General's office. From those communications, Westphal very reasonably (and correctly) concluded that his 2021 Employment Agreement was void and unenforceable under the WNA.

32.    Upon providing his notice of resignation, Westphal continued to help transition his work in an orderly and timely fashion to his former colleagues for approximately two-weeks.

33.    On April 26, 2023, Ms. Cox had a meeting with Westphal. Ms. Cox apprised him that (contrary to her past representations) Permobil did in fact have a restrictive covenant on file for him.

34.    Ms. Cox did not apprise Westphal how the supposed "audit" previously missed unearthing his 2021 Employment Agreement, or how this Employment Agreement somehow resurfaced just in time to apprise him of it two days prior to his last day at Permobil.

35.    Westphal's last day of employment was April 28, 2023.

**E.    Permobil Files Suit Against Westphal in Tennessee.**

36.    On June 9, 2023, Permobil filed the instant lawsuit against Westphal in the United States District Court for the Middle District of Tennessee.  It did not sue Sunrise under a tortious interference theory or any other theory.  Instead, Permobil chose to aim its legal firepower solely at this individual.

37.     When Permobil filed its Complaint, it knew (or at the very latest should have known) that the 2021 Employment Agreement contained a forum selection clause that was unlawful under the WNA.

38.     Any argument by Permobil to the contrary is further undercut by its attempt to obtain Westphal's signature on the 2023 Employment Agreement that tried (albeit unsuccessfully) to comply with the provisions of the WNA.

39.     Notably, Permobil did not seek a Temporary Restraining Order ("TRO") or Preliminary Injunction at the time it filed its Complaint on June 9, 2023. Failure to seek such a remedy at the outset of a litigation principally involving a non-compete restrictive covenant is quite atypical.

**F.     Westphal Voices Opposition to Permobil's Violations of the WNA, and Permobil Responds with a Motion for Preliminary Injunction.**

40.     On June 23, 2023, Westphal filed a Motion to Dismiss the Tennessee action, wherein he advanced his rights and Permobil's violations under the WNA based upon his reasonable belief that Permobil's conduct violated Washington state law. (*See* Docket No(s). 12 and 13).

41.     On July 21, 2023, Permobil responded to Westphal's Motion to Dismiss and that same day, filed a fifty-nine (59) page Motion for Preliminary Injunction. Through this treatise-length motion, Permobil sought to preclude Westphal from earning a living at his new employment with Sunrise, for a period of one-year.

42.     When Permobil filed its Motion for Preliminary Injunction, more than three (3) months had elapsed since Westphal's resignation.

43.     Permobil's Motion for Preliminary Injunction failed to identify any new harm that had occurred since the filing of its Complaint on June 9, 2023.

22

44.     Permobil's Motion for Preliminary Injunction neither articulated how the status quo changed from Westphal's resignation on April 28, 2023 to the filing of its lawsuit on June 9, 2023, nor how the status quo changed from the filing of its lawsuit to the filing of its Motion for Preliminary Injunction on July 21, 2023.

45.     The status quo had not changed, and the product that is the subject of Permobil's lawsuit – Project Greenfield – still had not gone to market. Upon information and belief, Project Greenfield has still not gone to market.

46.     Permobil's Motion for Preliminary Injunction failed to: (a) explain the reason for its delay in seeking injunctive relief; (b) to provide any evidence that Westphal disclosed any confidential information related to Project Greenfield; and (c) to show that Westphal solicited business utilizing any information that he might have with respect to Project Greenfield.

47.     Indeed, Permobil could not make such a contention because Westphal has not disclosed any confidential information or solicited any business utilizing any such information related to Project Greenfield.

48.     Permobil's decision to file its Motion for a Preliminary Injunction was substantially motivated by Westphal voicing his opposition to Permobil's violations of the WNA.

**G.     Westphal's Damages.**

49.     Permobil's actions have caused Westphal to experience significant harm.

50.     Since Permobil filed the Tennessee action, Westphal has suffered severe emotional distress and anxiety, for which he has sought medical treatment and incurred medical expenses.

51.     Westphal reasonably believes that his health has significantly deteriorated due to the severe emotional distress and anxiety associated with the Tennessee action.

52.     As a result of Permobil's unlawful, willful, and reckless conduct, Westphal has

suffered and will continue to suffer serious harm to his health and wellbeing.

53.     Permobil's egregious conduct towards Westphal is significantly misplaced, as its real controversy appears to be with Sunrise Medical, LLC, due to certain employees leaving Permobil to join Sunrise Medical, LLC.

54.     Rather than sue Sunrise, it has chosen to solely sue this individual, apparently in an effort to exert maximum pain upon him.

55.     Permobil's willful, intentional, and reckless conduct towards Westphal warrants significant damages, including but not limited to punitive damages.

## COUNT I – FRAUD

56.     Westphal refers to and incorporates by reference his allegations contained in Paragraphs 1 through 55 above, as if set forth fully herein.

57.     In October 2021, Permobil, through its agent Ms. Wilkinson, represented to Westphal that Washington law (rather than Tennessee law) would apply to the 2021 Employment Agreement.  Ms. Wilkinson's statement was an intentional misrepresentation, as evidenced by Permobil's filing of the Tennessee action against Westphal to enforce the 2021 Employment Agreement.

58.     Westphal reasonably relied upon this false representation when deciding to sign the 2021 Employment Agreement.

59.     In April 2023, Permobil, through its agent Ms. Cox, represented to Westphal that, "[a]n audit was done and there was not a copy of a signed agreement in your file." Given that the 2021 Employment Agreement that Westphal previously signed was "discovered" after he resigned – but before his last date of work at Permobil – this representation by Ms. Cox was false in an effort to get Westphal to sign a subsequent agreement that attempted to cure Permobil's previous

violations of the law.

60.     Ms. Cox's statement that Westphal was being presented with the 2023 Employment Agreement because a supposed "audit" had found that he had not previously executed an agreement containing a non-compete restrictive covenant was intentionally misleading, as all members of Project Greenfield were presented with the 2023 Employment Agreement, not just Westphal. It defies logic that Permobil would ask all members of Project Greenfield to enter a new non-compete restrictive covenant when a supposed "audit" revealed that only Westphal had not previously entered such a restrictive covenant.

61.     The 2023 Employment Agreement was an attempt by Permobil to cure its previous violations of the law, as evidenced by the fact that (a) there are significant differences between the 2021 Employment Agreement and 2023 Employment Agreement and (b) the latter includes a state-specific index, which includes portions of (but not all of) the WNA. This conduct by Permobil was an attempt to rectify past violations of various state laws by selling its employees on the notion that this new agreement was a "benefit."

62.     When Westphal resigned from Permobil, he reasonably believed that he was not bound by any non-compete restrictive covenant – a belief that he obtained from an agent of Permobil based on prior discussions.

63.     Westphal had already accepted his new employment with Sunrise Medical, LLC, *prior* to being informed that his 2021 Employment Agreement was discovered at the convenience of Permobil *after* his resignation but two-days before his last date of work.

64.     Nonetheless, Permobil initiated the Tennessee action against Westphal, in an effort to preclude him from earning a living. Permobil's fraudulent representations has caused Westphal to suffer significant emotional harm, anxiety, and other medical issues.

65.     Permobil's conduct was intentional, willful, malicious, and reckless. Such conduct warrants an award of significant punitive damages.

**COUNT II – CONSTRUCTIVE FRAUD (IN THE ALTERNATIVE TO COUNT I)**

66.     Westphal refers to and incorporates by reference his allegations contained in Paragraphs 1 through 65 above, as if set forth fully herein.

67.     In October 2021, Permobil, through its agent Ms. Wilkinson, represented to Westphal that Washington law (not Tennessee law) would apply to the 2021 Employment Agreement. Ms. Wilkinson's statement was misrepresentation, as evidenced by Permobil's filing of the Tennessee action against Westphal to enforce the 2021 Employment Agreement.

68.     Westphal reasonably relied upon this misrepresentation when deciding to sign the 2021 Employment Agreement.

69.     In April 2023, Permobil, through its agent Ms. Cox, represented to Westphal that, "[a]n audit was done and there was not a copy of a signed agreement in your file." Given that the 2021 Employment Agreement that Westphal previously signed was "discovered" after he resigned – but before his last date of work at Permobil – this representation by Ms. Cox was pretext (or at the very least a false statement of fact) in an effort to get Westphal to sign a subsequent agreement that attempted to cure Permobil's previous violations of the law.

70.     Ms. Cox's statement that Westphal was being presented with the 2023 Employment Agreement because a supposed "audit" had found that he had not previously executed an agreement containing a non-compete restrictive covenant was a misrepresentation, as all members of Project Greenfield were presented with the 2023 Employment Agreement, not just Westphal. It defies logic that Permobil would ask all members of Project Greenfield to enter a new non-compete restrictive covenant when a supposed "audit" revealed that only Westphal had not previously

26

entered such a restrictive covenant.

71.     The 2023 Employment Agreement was an attempt by Permobil to cure its previous violations of the law, as evidenced by the fact that (a) there are significant differences between the 2021 Employment Agreement and 2023 NGTL Employment Agreement and (b) the latter includes a state-specific index, which includes portions of the WNA. This conduct by Permobil was an attempt to rectify past violations of various state laws by selling its employees on the notion that this new agreement was a "benefit."

72.     When Westphal resigned from Permobil, he reasonably believed that he was not bound by any non-compete restrictive covenant – a belief that he obtained from an agent of Permobil based upon prior discussions.

73.     Westphal had already accepted his new employment with Sunrise Medical, LLC, *prior* to being informed that his 2021 Employment Agreement was "discovered" at the convenience of Permobil *after* his resignation but two-days before his last date of work.

74.     Nonetheless, Permobil initiated the Tennessee action against Westphal, in an effort to preclude him from earning a living. Permobil's fraudulent representations has caused Westphal to suffer significant emotional harm, anxiety, and other medical issues.

75.     Permobil's conduct was intentional, willful, malicious, and reckless. Such conduct warrants an award of significant punitive damages.

## COUNT III – VIOLATIONS OF THE WNA

76.     Westphal incorporates by reference the allegations contained in Paragraphs 1 through 75.

77.     The WNA was enacted on or about May 8, 2019, which, as of January 1, 2020, set forth new changes to Washington state non-competition laws.

78.     Under the Act, a non-competition covenant is void and unenforceable against an employee: (a)(i) unless the employer discloses the terms of the covenant in writing to the prospective employee no later than the time of the acceptance of the offer of employment and, if the agreement becomes enforceable only at a later date due to changes in the employee's compensation, the employer specifically discloses that the agreement may be enforceable against the employee in the future; or (ii) if the covenant is entered into after the commencement of employment, unless the employer provides independent consideration for the covenant. See RCW § 49.62.020(1)(a).

79.     On October 4, 2021, Permobil offered Westphal a position as "Greenfield Services Workstream Lead" on a project called "Project Greenfield."

80.     The Offer Letter stipulated "[f]ollowing execution of this offer, we will proceed with a formal employment agreement."

81.     The Offer Letter did not stipulate the new position would be contingent upon Westphal entering a non-compete restrictive covenant (or any restrictive covenant), and no one at Permobil informed Westphal of any such requirement prior to his acceptance of the Offer Letter.

82.     Westphal accepted the Offer Letter on October 5, 2021, and returned the signed copy to Permobil's Human Resources Manager, Heidi Wilkinson.

83.     Nine days later, on October 14, 2021, Westphal was asked by Ms. Wilkinson to sign an employment agreement, which incorporated a non-compete restrictive covenant, among other restrictive covenants.

84.     This request by Ms. Wilkinson on behalf of Permobil occurred *after* Westphal had already accepted his new position on October 5, 2021, via the Offer Letter, and therefore was a *per se* violation of RCW § 49.62.020(1)(a)(i).

85.     October 14, 2021, was the first date that Westphal was apprised by anyone on behalf of Permobil that his execution of an employment agreement would require him to enter a non-compete restrictive covenant, among other restrictive covenants.

86.     The employment agreement which incorporated the non-compete restrictive covenant further stated, "the Company desires to continue to retain the services and employment of the Employee, and the Employee desires to continue Employees services and employment with the Company in the role of Greenfield Services Team Member …." Similarly, the employment agreement which incorporated the non-compete restrictive covenant stated, "Employee agrees to continue such employment."

87.     Therefore, according to the agreement drafted by Permobil, and thus construed against it, continued employment was the purported consideration for Westphal's execution of the employment agreement which incorporated the non-compete restrictive covenant.

88.     This action by Permobil was another *per se* violation of the WNA, as Permobil was required under the Act to provide Westphal with independent consideration for the newly proposed restrictive covenant. *See* RCW § 49.62.020(1)(a)(ii).

89.     In addition, the WNA provides a noncompetition covenant signed by an employee or independent contractor who is Washington-based is void and unenforceable: (1) if the covenant requires the employee or independent contractor to adjudicate a noncompetition covenant outside of this state; and (2) to the extent it deprives the employee or independent contractor of the protections or benefits of this chapter. *See* RCW § 49.62.050.

90.     Pursuant to RCW § 49.62.080, subsection (1) states that upon a violation of this chapter, the attorney general, on behalf of a person or persons, may pursue any and all relief. A person aggrieved by a noncompetition covenant to which the person is a party may bring a cause

of action to pursue any and all relief provided for in subsections (2) and (3) of this section. Under subsection (2), if a court or arbitrator determines that a noncompetition covenant violates this chapter, the violator must pay the aggrieved person the *greater* of his or her *actual damages or a statutory penalty* of five thousand dollars, *plus reasonable attorneys' fees, expenses, and costs* incurred in the proceeding.

91. On October 14, 2021, Permobil required Westphal to sign an employment agreement that incorporated a non-compete restrictive covenant, which was subject to an out-of-state forum selection clause. That purported agreement attempted to deprive Westphal of protections under the WNA, including but not limited to: (1) the right to be apprised of the need for a restrictive covenant prior to accepting the position on Project Greenfield, (2) the right to be given independent consideration for that covenant, and (3) the right to defend any lawsuit against him in the state where he resides.

92. This request was a *per se* violation of RCW §§ 49.62.050 and 49.62.080, giving rise to an award of fees, expenses and costs, and either a $5,000 penalty or actual damages, whichever is greater.

93. Permobil's filing of the lawsuit in Tennessee was another violation of the Act.

94. Permobil's filing of its Motion for Preliminary Injunction was yet another violation of the Act.

95. Westphal has suffered, and will continue to suffer, economic and compensatory damages as a direct result of Permobil's willful and intentional violations of the WNA.

96. There are, at least, five separate violations of the Act:

- Permobil's failure to apprise Westphal of the need to sign a restrictive covenant prior to his acceptance of the position on Project Greenfield.

- Permobil's failure to provide Westphal with independent consideration for his

execution of the 2021 employment agreement that incorporated the non-compete restrictive covenant.

- Permobil's demand that Westphal enter a non-compete restrictive covenant that is subject to an out-of-state forum selection clause.

- Permobil's filing of the lawsuit in Tennessee.

- Permobil's filing of the Motion for Preliminary Injunction.

97.    Westphal is strictly entitled to either statutory penalties of $25,000 for these five violations, or his actual damages for emotional distress, anxiety and medical expenses, whichever is greater.

98.    That this Court has found the 2021 Employment Agreement is subject to Tennessee law does not foreclose a claim that Permobil violated the WNA. This Count does not address the *enforceability* of the 2021 Employment Agreement or which law governs that Agreement, but the *violations of the WNA* perpetrated by Permobil towards Westphal.

99.    Westphal is further entitled to his reasonable attorneys' fees, costs and expenses.

100.    Since Permobil has chosen to sue Westphal in Tennessee, it has necessarily conceded that jurisdiction and venue are appropriate for this and other counterclaims.

## COUNT IV – COMMON LAW RETALIATION FOR VIOLATION OF THE PUBLIC POLICY OF THE STATE OF WASHINGTON

101.    Westphal refers to and incorporates by reference his allegations contained in Paragraphs 1 through 100 above, as if set forth fully herein.

102.    Permobil's filing of its Motion for Preliminary Injunction constituted the tort of retaliation in violation of public policy under Washington state law.

103.    The common law tort of retaliation in violation of public policy has four elements:

- the existence of a clear public policy (i.e., the clarity element).

- that discoursing the conduct in which he engaged would jeopardize the

31

public policy (i.e., the jeopardy element).

- the public-policy-linked conduct caused the adverse action (i.e., causation).

- the defendant cannot offer an overriding justification for the adverse action (i.e., the absence of justification element).

104. All four of these elements are met here.

105. The WNA articulates a clear public policy – i.e., (a) an employee must be informed of a non-compete restrictive covenant prior to accepting a job offer; (b) an employee must be given independent consideration for the restrictive covenant; and (c) an employee cannot be required to submit to an out-of-state forum selection clause. The WNA provides for statutory penalties or actual damages and attorneys' fees, as well as empowers the State Attorney General to investigate violations of the WNA, all of which further underscores the strength of the public policy.

106. By filing a fifty-nine (59) page Motion for Preliminary Injunction, Permobil attempted to discourage Westphal (and potentially other employees) from voicing opposition to Permobil's violations of the WNA, an act which jeopardizes the clear public policy of the State of Washington.

107. Westphal engaged in protected activity when he filed a Motion to Dismiss the Tennessee action, wherein he voiced his opposition to Permobil's violations of the WNA. Thereafter and in response to Westphal's Motion to Dismiss, Permobil took an adverse action against Westphal by filing a Motion for Preliminary Injunction, wherein Permobil sought to enjoin Westphal from working for Sunrise Medical, LLC, or any other competitor, for a period of one-year.

108. There is a causal connection between Westphal's opposition to Permobil's unlawful conduct and Permobil's Motion for Preliminary Injunction. Westphal advanced his rights under the WNA on June 23, 2023, and Permobil filed its Motion for Preliminary Injunction

32

approximately one-month later on July 21, 2023. Temporal proximity and retaliatory motive exist between these two events, which is further evidenced by Permobil's significant interest in preparing its Motion for Preliminary Injunction *after* Westphal voiced his opposition to Permobil's conduct in violation of the WNA.

109.    Permobil cannot provide an overriding justification for its retaliatory conduct because it knew of the WNA's prohibitions at the very latest as of April 4, 2023, when Ms. Cox requested that Westphal sign the 2023 Employment Agreement which included a state-specific appendix that accounted for certain portions of the WNA.  This act was prior to Permobil filing the Tennessee action on June 9, 2023. When Westphal filed his Motion to Dismiss on June 23, 2023, rather than dismiss the Tennessee action upon being notified of Westphal's opposition to Permobil's violations of the WNA (or at the very least transferring the matter to a federal court in Washington), Permobil exemplified its efforts to litigate this matter by filing a fifty-nine (59) page Motion for Preliminary Injunction.

110.    When Permobil filed its Motion for Preliminary Injunction, more than three (3) months had elapsed since Westphal's resignation, and its motion failed to identify any new harm that had occurred since the filing of its Complaint on June 9, 2023.

111.    Permobil neither articulated how the status quo changed from Westphal's resignation on April 28, 2023 to the filing of its lawsuit on June 9, 2023, nor how the status quo changed from the filing of its lawsuit to the filing of its Motion for Preliminary Injunction on July 21, 2023. The status quo had not changed, and the product that is the subject of Permobil's lawsuit – Project Greenfield – still had not gone to market. Upon information and belief, Project Greenfield has still not gone to market.

112.    Permobil's retaliatory motive and conduct was willful, knowing, and exercised with

a reckless disregard for Westphal's protected rights under the WNA. An award of punitive damages is wholly appropriate.

113.    That this Court has found the 2021 Employment Agreement is subject to Tennessee law does not foreclose a claim that Permobil violated the WNA. This Count does not address the *enforceability* of the 2021 Employment Agreement, but the *retaliatory conduct* perpetrated by Permobil towards Westphal.

114.    Westphal has suffered, and will continue to suffer, economic and compensatory damages as a direct result of Permobil's willful, malicious, and intentional conduct in retaliation for Westphal advancing his rights under the WNA.  As previously set forth in detail above, Permobil's actions have caused Westphal to suffer significant emotional distress, anxiety, and other medical issues.

115.    Since Permobil has chosen to sue Westphal in Tennessee, it has necessarily conceded that jurisdiction and venue are appropriate for this and other counterclaims.

## COUNT V – COMMON LAW RETALIATION UNDER TENNESSEE LAW (IN THE ALTERNATIVE TO COUNT IV)

116.    Westphal refers to and incorporates by reference his allegations contained in Paragraphs 1 through 116 above, as if set forth fully herein.

117.    The elements of common law retaliation in Tennessee are: (a) the plaintiff engaged in a protected activity; (b) the defendant took adverse action against the plaintiff, and (c) the defendant's adverse action was substantially motivated by the plaintiff's protected activity.

118.    All three of these elements are present here.

119.    Westphal engaged in a protected activity when he voiced his opposition to Permobil's violations of the WNA, as set forth in his Motion to Dismiss. (*See* Doc. No(s). 12 and 13).

34

120.    The touchstone inquiry is whether Westphal had a good faith and honestly held belief that the conduct of which he complained was illegal. Westphal reasonably believed upon his understanding of the prohibitions of the WNA that Permobil violated the law when it asked him to enter the 2021 Employment Agreement, as set forth in detail in his Motion to Dismiss.

121.    Permobil took an adverse action against Westphal by filing a Motion for Preliminary Injunction very shortly after – and in response to – Westphal voicing his rights under the WNA.

122.    There is a causal connection between Permobil's conduct and Westphal's opposition to Permobil's unlawful conduct in having him enter the 2021 Employment Agreement that incorporated a void and unenforceable non-compete restrictive covenant under Washington law. This causal connection is evidenced by the following actions taken by Permobil: (a) the filing of a Motion for Preliminary Injunction that was not contemporaneously filed with its Complaint; (b) filing the Motion for Preliminary Injunction only after Westphal voiced his opposition to Permobil's unlawful conduct under the WNA; (c) the temporal proximity and retaliatory motive behind Permobil's actions; (d) the billing records associated with the filing of its Complaint, consideration of filing a Motion for Preliminary Injunction, and the actual decision to file a Motion for Preliminary Injunction; (e) the timeline between the filing of the Complaint and associated filings for Westphal's Motion to Dismiss and Permobil's Motion for Preliminary Injunction; and (f) Permobil's filing of its Motion for Preliminary Injunction on the same day that it opposed Westphal's Motion to Dismiss.

123.    Count V is not preempted by the Tennessee Public Protection Act ("TPPA") or amendments to the same, which applies to wrongful discharge after an employee voices opposition to an employer's illegal activity. This is not a wrongful discharge case, and none of the parties

have made any such contention throughout these proceedings. Accordingly, common law retaliation claims survived any amendments to the TPPA.

124.     The actions taken by Permobil were designed to chill Westphal and other employees from exercising their rights under the WNA or voicing opposition to Permobil's actions that could potentially violate various state laws.

125.     Permobil retaliated against Westphal in an effort to preclude him from earning a living. Permobil's actions have caused Westphal to suffer significant emotional harm, anxiety, and other medical issues.

126.     Permobil's conduct was intentional, willful, malicious, and reckless. Such conduct warrants an award of significant punitive damages.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

127.     Westphal refers to and incorporates by reference his allegations contained in Paragraphs 1 through 126 above, as if set forth fully herein.

128.     Under Tennessee law, there are three essential elements to a cause of action for intentional infliction of emotional distress: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury.

129.     All three of these elements are present here.

130.     Permobil's conduct has been intentional because it has full knowledge that the 2021 Employment Agreement violates the WNA.  Permobil is also fully aware that the purported "audit" was designed to coerce Westphal to sign the 2023 Employment Agreement, which was an attempt by Permobil to correct its previous violations of the law with respect to the 2021 Employment Agreement.

131. Permobil's decision to file a Motion for Preliminary Injunction in response to Westphal voicing his opposition to Permobil's unlawful conduct in violation of the WNA was intentional.

132. Its decision to sue Westphal only, and not Sunrise, was done intentionally to inflict maximum pressure and harm on Westphal.

133. Permobil's actions are extreme and outrageous, as its conduct attempts to prevent Westphal from earning a living, changing jobs, or seeking professional success, all of which are part of the American Dream and an essential part of free markets and capitalism.

134. Permobil's actions have been with the intent of inflicting pressure on Westphal, an individual, from working in his current position at Sunrise, or any other competitor of Sunrise, for the period of one-year. This conduct, and how Permobil has approached and engaged in certain behaviors associated with its attempt to enforce the 2021 Employment Agreement, have been extreme, outrageous, and should not be tolerated in civilized society.

135. Permobil has forced Westphal to suffer though this ordeal, all the while knowing that it had not signed the Employment Agreement at issue, and thus knowing that under the terms of the agreement Permobil drafted, it had no effect on Westphal.

136. Permobil's conduct was intentional, willful, malicious, and reckless. Such conduct warrants an award of significant punitive damages, as it has caused Westphal to suffer severe emotional distress, anxiety, and other medical issues.

### COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

137. Westphal refers to and incorporates by reference his allegations contained in Paragraphs 1 through 136 above, as if set forth fully herein.

138. In Tennessee, a claim for negligent infliction of emotional distress requires that a

plaintiff: (1) satisfy the fine elements of ordinary negligence: duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause; (2) establish a 'serious' or 'severe' emotional injury; and (3) support his or her serious or severe injury with expert medical or scientific proof.

139.     All of these elements are present here.

140.     Permobil's actions towards Westphal have, at the very least, been negligent.  As Permobil forced Westphal to suffer though this ordeal, it knew or should have known that it had not signed the Employment Agreement at issue, and thus it knew or should have known that under the terms of the agreement Permobil drafted, it had no effect on Westphal.  Permobil had a duty not to attempt to force a "contract" it knew or should have known: (1) had not been executed by the company, and (2) was a plain violation of Washington state law.  It breached that duty, causing extreme emotional and medical harm upon Westphal.

141.     Permobil has engaged in extreme and outrageous conduct towards Westphal. Permobil knew or should have known that the 2021 Employment Agreement violates the WNA. Permobil knew or should have known that the purported "audit" was designed to coerce Westphal to sign the 2023 Employment Agreement, which was an attempt by Permobil to correct its previous violations of the law with respect to the 2021 Employment Agreement.

142.     Permobil's decision to file a Motion for Preliminary Injunction in response to Westphal voicing his opposition to Permobil's unlawful conduct in violation of the WNA was at best, negligent, and at worst, intentional.

143.     Permobil's actions have attempted to prevent Westphal from earning a living, changing jobs, or seeking professional success, all of which are part of the American Dream and an essential part of free markets and capitalism.  Permobil's conduct, and how Permobil has approached and engaged in certain behaviors associated with its attempt to enforce the 2021

38

Employment Agreement, have been negligent, reckless, outrageous, and should not be tolerated in a civilized society. Permobil has engaged in such behavior in a reckless regard for Westphal and has caused him to suffer serious emotional injury.

144.     Permobil's conduct has caused Westphal to suffer severe emotional distress, anxiety, and other medical issues.

## COUNT VIII – NEGLIGENT MISREPRESENTATION

145.     Westphal refers to and incorporates by reference his allegations contained in Paragraphs 1 through 144 above, as if set forth fully herein.

146.     The elements of the tort of negligent misrepresentation are: (1) a representation to a past or existing material fact; (2) the representation was false; (3) the defendant made the representation without exercising reasonable care; (4) made with the intent to induce the plaintiff to rely upon it; and (5) plaintiff must have been unaware of the falsity and acted in justifiable reliance upon the truth of the representation. The plaintiff must have sustained damage as a result of the reliance. The elements of intentional misrepresentation are the same except that the defendant must have made the representation with an intent to defraud the plaintiff.

147.     All of these elements are met here.

148.     In October 2021, Permobil, through its agent Ms. Wilkinson, represented to Westphal that Washington law (not Tennessee law) would apply to the 2021 Employment Agreement. Ms. Wilkinson's statement was a misrepresentation of a material fact, as evidenced by Permobil's filing of the Tennessee action against Westphal to enforce the 2021 Employment Agreement. This false representation by Ms. Wilkinson was made without the exercise of reasonable care for Westphal's interests. Ms. Wilkinson made this false representation with the intent to induce Westphal to rely upon it, as she provided him with the response that he needed to

hear to obtain his signature on the 2021 Employment Agreement.

149. Westphal was unaware of the statement's falsity and justifiably relied upon Ms. Wilkinson's misrepresentation when he decided to sign the 2021 Employment Agreement.

150. Ms. Wilkinson's statement to Westphal about the governing law of the 2021 Employment Agreement was false. In April 2023, Permobil, through its agent Ms. Cox, represented to Westphal that, "[a]n audit was done and there was not a copy of a signed agreement in your file." Given that the 2021 Employment Agreement that Westphal previously signed was all the sudden discovered after he resigned – but before his last date of work at Permobil – this representation by Ms. Cox was pretext (or at the very least a false representation of material fact) designed to obtain Westphal's signature on a subsequent agreement that attempted to cure Permobil's previous violations of the law.

151. Ms. Cox's statement that Westphal was being presented with the 2023 Employment Agreement because a supposed "audit" had found that he had not previously executed an agreement containing a non-compete restrictive covenant was misleading, as all members of Project Greenfield were presented with the 2023 Employment Agreement, not just Westphal. It defies logic that Permobil would ask all members of Project Greenfield to enter a new non-compete restrictive covenant when a supposed "audit" revealed that only Westphal had not previously entered such a restrictive covenant. The 2023 Employment Agreement was an attempt by Permobil to cure its previous violations of the law, as evidenced by the fact that (a) there are significant differences between the 2021 Employment Agreement and 2023 Employment Agreement and (b) the latter includes a state-specific index, which includes portions of the WNA. This conduct by Permobil was an attempt to rectify past violations of various state laws by selling its employees on the notion that this new agreement was a "benefit."

152.     When Westphal resigned from Permobil, he reasonably believed that he was not bound by any non-compete restrictive covenant – a belief that he obtained from an agent of Permobil based on prior discussions. Westphal had already accepted his new employment with Sunrise Medical, LLC, prior to being informed that his 2021 Employment Agreement was miraculously discovered at the convenience of Permobil after Westphal's resignation but two-days before his last date of work. Based on Westphal's knowledge and understanding of the WNA with respect to his 2021 Employment Agreement and refusal to sign the 2023 Employment Agreement, Westphal continued his employment with Sunrise Medical, LLC.

153.     As a result of Westphal's justifiable reliance on Ms. Wilkinson's false statement, Permobil initiated the Tennessee action against Westphal, in an effort to preclude him from earning a living, which has caused Westphal to suffer significant emotional harm, anxiety, and other medical issues, as a result of Permobil's fraudulent representations.

**COUNT IX – INTENTIONAL OR FRAUDULENT MISREPRESENTATION**

154.     Westphal refers to and incorporates by reference his allegations contained in Paragraphs 1 through 153 above, as if set forth fully herein.

155.     The elements of intentional or fraudulent misrepresentation are: (1) an *intentional misrepresentation with regard to a material fact*; (2) knowledge of the representation's falsity (i.e., that the representation was made knowingly or without belief in its truth, or recklessly without regard to its truth or falsity); (3) that the plaintiff *reasonably relied* on the misrepresentation and *suffered damage*; and (4) that the misrepresentation relates to an existing or past fact.

156.     All of these elements are met here.

157.     In October 2021, Permobil, through its agent Ms. Wilkinson, intentionally represented to Westphal that Washington law (rather than Tennessee law) would apply to the 2021

Employment Agreement. Ms. Wilkinson's statement was an intentional misrepresentation with regard to a material fact and she had knowledge of its falsity, as evidenced by Permobil's filing of the Tennessee action against Westphal to enforce the 2021 Employment Agreement.

158.     Westphal reasonably relied upon this false representation when deciding to sign the 2021 Employment Agreement.

159.     In April 2023, Permobil, through its agent Ms. Cox, represented to Westphal that, "[a]n audit was done and there was not a copy of a signed agreement in your file." Given that the 2021 Employment Agreement that Westphal previously signed was all the sudden discovered after he resigned – but before his last date of work at Permobil – this representation by Ms. Cox was false and designed to get Westphal to sign a subsequent agreement that attempted to cure Permobil's previous violations of the law.

160.     Ms. Cox's statement that Westphal was being presented with the 2023 Employment Agreement because a supposed "audit" had found that he had not previously executed an agreement containing a non-compete restrictive covenant was misleading, as all members of Project Greenfield were presented with the 2023 Employment Agreement, not just Westphal. It defies logic that Permobil would ask all members of Project Greenfield to enter a new non-compete restrictive covenant when a supposed "audit" revealed that only Westphal had not previously entered such a restrictive covenant. The 2023 Employment Agreement was an attempt by Permobil to cure its previous violations of the law, as evidenced by the fact that (a) there are significant differences between the 2021 Employment Agreement and 2023 Employment Agreement and (b) the latter includes a state-specific index, which includes portions of the WNA. This conduct by Permobil was an attempt to rectify past violations of various state laws by selling its employees on the notion that this new agreement was a "benefit."

161. When Westphal resigned from Permobil, he reasonably believed that he was not bound by any non-compete restrictive covenant – a belief that he obtained from an agent of Permobil based on prior discussions. Westphal had already accepted his new employment with Sunrise Medical, LLC, prior to being informed that his 2021 Employment Agreement was "discovered" at the convenience of Permobil after Westphal's resignation but two-days before his last date of work. Based on Westphal's knowledge and understanding of the WNA with respect to his 2021 Employment Agreement and his refusal to sign the 2023 Employment Agreement, Westphal continued his employment with Sunrise Medical, LLC.

162. Nonetheless, Permobil initiated the Tennessee action against Westphal, in an effort to preclude him from earning a living, which has caused Westphal to suffer significant emotional harm, anxiety, and other medical issues, as a result of Permobil's fraudulent representations.

163. Permobil's conduct was intentional, willful, malicious, and reckless. Such conduct warrants an award of significant punitive damages.

## JURY DEMAND

164. Westphal demands a jury for all issues so triable for his counterclaims.

## PRAYER FOR RELIEF

WHEREFORE, Westphal respectfully requests that this Court grant the following relief:

1. That a jury be empaneled to determine all issues triable by a jury;

2. That all of Permobil's claims against Westphal be dismissed, with prejudice.

3. An award of Westphal's actual damages for Permobil's conduct, including but not limited to damages for emotional distress, anxiety and medical expenses;

4. An award of penalties under the WNA or actual damages, whichever is greater;

5. An award of punitive damages, in an amount sufficient to deter Permobil from

engaging in such wrongful conduct in the future;

6.　An award of compensatory, punitive, exemplary, and any other appropriate damages against Permobil in an amount to be proven at trial;

7.　An award of reasonable attorneys' fees and costs incurred in defending any lawsuit filed by Permobil against him, as well as Westphal's actions taken to enforce and defend his legal rights in this action; Westphal is entitled to these fees as the prevailing party under the contracts upon which Permobil sued and is further entitled to such fees under the WNA;

8.　An award of costs and expenses during the pendency of this lawsuit;

9.　An award of pre-judgment and post-judgment interest;

10.　The issuance of a letter of apology from Permobil's Chief Executive Officer;

11.　An injunction requiring mandatory one-hour training of Permobil's C-suite level employees on the laws as they relate to restrictive covenants and retaliation;

12.　An award of any other injunctive relief as deemed appropriate by the Court; and

13.　An award from this Court for such other and further relief as may be just and proper to award.

Respectfully Submitted,

*/s/ Jonathan O. Harris*
Jonathan O. Harris (TN Bar No. 21508)
John R. Adams (TN Bar No. 39284)
JACKSON LEWIS P.C.
611 Commerce Street, Suite 2803
Nashville, TN 37203
Telephone: (615) 565-1661
Fax: (615) 206-2244
Email: jonathan.harris@jacksonlewis.com
    john.adams@jacksonlewis.com

*Attorneys for Defendant/Counter-Plaintiff*


## CERTIFICATE OF SERVICE

I certify that, on March 21, 2024, I served a true and correct copy of the foregoing *Defendant/Counter-Plaintiff's Answer and Counterclaims* via electronic mail, upon the following counsel of record:

Erin Palmer Polly
Jason Callen
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
erin.polly@klgates.com
jason.callen@klgates.com

*Attorneys for Plaintiff/Counter-Defendant*

*/s/ Jonathan O. Harris*
Jonathan O. Harris

4859-0403-7548, v. 4

45